UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

UTICA MUTUAL INSURANCE
COMPANY,

                              Plaintiff,

              -against-                                    6:12-CV-0196 (LEK/ATB)

MUNICH REINSURANCE AMERICA,
INC.,

                              Defendant.
_____

## <u>MEMORANDUM-DECISION and ORDER</u>

## I.    INTRODUCTION

         In this reinsurance-coverage dispute, Plaintiff, insurer Utica Mutual Insurance Company

("Utica"), brings a breach-of-contract claim seeking reimbursement from Defendant, reinsurer

Munich Reinsurance America, Inc. ("Munich"), for defense costs and other expenses Utica has

provided to Goulds Pumps, Inc. ("Goulds").  <u>See generally</u> Dkt. No. 1 ("Complaint").[1]  Presently

before the Court are Munich's Motion for summary judgment, Utica's Motion to strike an affidavit

submitted by Munich, and Utica's Motion to continue discovery.  Dkt. Nos. 22 ("SJ Motion"); 27

("Motion to Strike"); 29 ("Motion to Continue").  For the following reasons, the SJ Motion is

granted and the Motions to Strike and Continue are denied.

## II.   BACKGROUND

### A.  Factual History

         Utica is incorporated under the laws of, and has a principal place of business in, New York.

_____

         [1] Utica also seeks a declaratory judgment that Munich is responsible for future expense
costs.  Compl. at 4.

Dkt Nos. 22-10 ("SMF") ¶ 1; 28-1 ("SMF Response") ¶ 1.  Goulds manufactured pumps that allegedly incorporated asbestos.  SMF ¶ 5; SMF Resp. ¶ 5.  In 1973, Goulds was based in New York.  SMF ¶ 5; SMF Resp. ¶ 5.  Utica issued a number of insurance policies to Goulds, among which was an umbrella liability policy ("Umbrella Policy") running from July 1, 1973 to July 1, 1974.  SMF ¶ 6; SMF Resp. ¶ 6.  The Umbrella Policy has a liability limit of $25 million "per occurrence or in the aggregate."  SMF ¶¶ 7-8; SMF Resp. ¶¶ 7-8.  Utica entered into a facultative contract of reinsurance[2] ("Certificate")[3] with Munich covering part of the Umbrella Policy.  SMF ¶ 15; SMF Resp. ¶ 15.  The Certificate has a $5 million limit of liability.  SMF ¶ 15; SMF Resp. ¶ 15; Dkt. No. 28-2 ¶ 41.

Numerous asbestos-related bodily injury claims have been asserted against Goulds.  SMF ¶ 5; SMF Resp. ¶ 5.  In 2006 or 2007, Goulds and Utica reached, following litigation, a settlement agreement regarding Goulds' claims for coverage under the Umbrella Policy and other policies.  SMF ¶ 17; SMF Resp. ¶ 17.  Utica has been paying a portion of Goulds' losses and defense costs pursuant to this settlement agreement.  SMF ¶ 20; SMF Resp. ¶ 20.

Munich has, pursuant to the Certificate, reimbursed Utica for five-million dollars of loss and expense payments made by Utica to Goulds under the Umbrella Policy.  SMF ¶ 21; SMF Resp. ¶ 21.

_____

[2] "Reinsurance occurs when one insurer (the 'ceding insurer' or 'reinsured') 'cedes' all or part of the risk it underwrites, pursuant to a policy or group of policies, to another insurer.  The reinsurer agrees to indemnify the ceding insurer on the risk transferred.  The purpose of reinsurance is to diversify the risk of loss and to reduce required capital reserves. . . .  There are two basic types of reinsurance policies-facultative and treaty.  In facultative reinsurance, a ceding insurer purchases reinsurance for a part, or all, of a single insurance policy.  Treaty reinsurance covers specified classes of a ceding insurer's policies."  Unigard Sec. Ins. Co., Inc. v. North River Ins. Co., 4 F.3d 1049, 1053-54 (2d Cir. 1993) (citations omitted).

[3] Reinsurance contracts are generally referred to as "certificates."  Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co., 594 N.E.2d 571, 574 (N.Y. 1992).

### B. Procedural History

Utica filed the Complaint in January 2012. Compl. At the initial pretrial conference in July 2012, Munich advised that it would be filing an early motion for summary judgment. Text Order of July 25, 2012. The Honorable Andrew T. Baxter, U.S. Magistrate Judge, authorized a limited period of discovery that could be extended following the Court's ruling on Munich's anticipated summary judgment motion. See id. Discovery was stayed as of November 5, 2011. Text Order of November 5, 2011. The SJ Motion followed, accompanied by, *inter alia*, a Memorandum of law and an Affidavit from Richard B. Hill ("Hill"), a Munich vice president. Dkt. Nos. 22-11[4] ("SJ Memorandum"); 22-2 ("Hill Affidavit"). Utica then moved to strike Hill's Affidavit, responded to the SJ Motion, and moved to continue discovery. Mot. to Strike; Dkt. No. 28 ("SJ Resp.); Mot. to Continue. An onslaught of responses and replies have followed. See generally Dkt.

## III. LEGAL STANDARD

### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d

---

[4] A number of the filings in this case have, pursuant to a stipulated protective order and an Order of the Court, been filed in both redacted and unredacted versions, with the latter filed under seal. See Dkt. Nos. 21; 50. See generally Dkt. Because the Court has not relied on any of the redacted material, it will cite exclusively to the unsealed versions of filings.

Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows that there is no genuine dispute as to any material fact, the burden shifts to the nonmoving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986).

At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

**B. Motion to Continue**

Federal Rule of Civil Procedure 56(d) provides that, if a party opposing a summary judgment motion demonstrates that "for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." The party opposing summary judgment must identify "potentially discoverable evidence" that might raise an issue of material fact. Lunts v. Rochester City Sch. Dist., 515 F. App'x 11, 14 (2d Cir. 2013). In a

breach of contract action, additional discovery should not be granted where a contract is unambiguous and its meaning may therefore be resolved as a matter of law. See Kashfi v. Phibro-Salomon, Inc., 628 F. Supp. 727, 740 n.10 (S.D.N.Y. 1986).

## IV.    DISCUSSION

Both parties acknowledge that: (1) the Certificate requires Munich to reimburse Utica for expense payments; (2) the Certificate has a five million-dollar limit of liability; and (3) Munich has already reimbursed Utica for five-million dollars of losses and expenses. This dispute centers on whether Munich's expense payments are subject to the limit of liability or whether Munich is obligated to pay for expenses in excess of that limit. Munich contends that the limit of liability is expense-inclusive. See SJ Mem. at 15-20.[5] Utica responds that Munich has not demonstrated that the Certificate's limit of liability is expense-inclusive, because: (1) Munich has not established the actual terms of, or applicable law governing, the Certificate; and (2) even if Munich has established the terms of the Certificate, the Certificate either unambiguously excludes expenses from the limit of liability or is ambiguous and must be interpreted using extrinsic evidence. See SJ Resp. at 25-38. Utica therefore seeks denial of the SJ Motion and additional discovery regarding each of these issues. See generally id.

### A. Authenticity of the Certificate

Utica attached a two-page document to its Complaint. Dkt. No. 1-3 ("Document"). The first

---

[5] Munich also seeks summary judgment on an alternative ground: the Umbrella Policy does not require Utica to make the expense payments at issue and therefore Munich, as the reinsurer of that policy, cannot be liable for such payments. See SJ Mem. at 11-15. Because the Court determines that the Certificate is expense-inclusive and therefore grants summary judgment on that ground, the Court need not reach Munich's argument regarding the Umbrella Policy.

page of the Document contains "declarations," Dkt. No. 1-1 at 2[6] ("Declarations Page"), while the second page contains "conditions," Dkt. No. 1-1 at 3 ("Conditions Page"). Munich attached the same two-page document to the Hill Affidavit. Dkt. No. 22-3. Hill affirmed that this document was a "true and correct copy" of the Certificate. Hill Aff. ¶ 4. Utica acknowledges that the Declarations Page was of part the Certificate but asserts that the Certificate may have contained a page of conditions different than the Conditions Page. See SJ Resp. at 27. Utica therefore argues that Munich "has failed to carry its burden to submit admissible evidence to establish the absence of a genuine issue of material fact" regarding the terms of the complete Certificate. Id.

Utica cannot now controvert what it has effectively admitted. Utica attached the Document, including the Conditions Page, to the Complaint; treated the Document as accurate, and relied upon it throughout the Complaint. In the Complaint, Utica states that Munich and Utica "entered into a reinsurance agreement . . . ('the Certificate'). A *copy* of the Certificate provided by Munich Re is attached as Exhibit 1." Compl. ¶ 10 (emphasis added). Utica now argues that it "merely stated that the documents attached to the complaint were documents that [Munich] provided to Utica." Dkt. No. 57 ("Continue Reply") at 5. But Utica did more than merely describe the source of the Document; Utica deemed it a "copy" of the Certificate. Utica used no limiting language; it did not, for example, describe the Document as a "purported copy."[7] Utica's admission that the Document was a copy of the Certificate contradicts its present contention that the Document and Certificate may have differed. See BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "copy" as "imitation or reproduction of an original"). Moreover, the Complaint otherwise treats the Document as accurate:

---

[6] The pagination corresponds to the page numbers assigned by ECF.

[7] Describing a document as "provided by Munich" does not, without more, imply that its authenticity is in question.

it alleges, for example that "Utica has satisfied all of the applicable *terms, conditions*, and other requirements under the Certificate." Compl. ¶ 24 (emphasis added). Without any limiting language, Utica alleged compliance with conditions it now claims cannot be ascertained. A party that relies upon and attaches a document to its complaint cannot dispute its accuracy. See Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000) (finding that, where party attached document to his summary judgment briefs and relied on the accuracy of that document therein, he "conceded the accuracy of the documents" and therefore the documents were properly authenticated even without a supporting affidavit); Walker v. Wayne County 850 F.2d 433, 435 (8th Cir. 1988) (finding that otherwise inadmissible document could be considered on summary judgment where party had submitted it without reservation); TufAm., Inc. v. Diamond, No. 12 Civ. 3529, 2013 WL 4830954, at *8 (S.D.N.Y. Sept. 10, 2013) ("[T]he facts alleged in a complaint or the documents attached thereto can be self-defeating."); WRM Am. Indem. Co., Inc. v. Siemens Bldg. Techs, Inc., No. 12-cv-73, 2012 WL 6045157, at *3 (S.D. Ind. Dec. 5, 2012) ("[Plaintiff] cannot now be heard to attack the truth and accuracy of the document it attached to its complaint."). Moreover, Utica's admission itself constitutes admissible evidence of the terms of the Certificate that the Court can consider in ruling on the SJ Motion. See FED. R. CIV. P. 56(c) (noting that a party asserting that a fact is not genuinely disputed can point to "admissions"); Woods, 234 F.3d at 987-88 (holding that a party's attachment of a document to its pleading and reliance on that document constitutes an admission under Rule 56); see also Daniel v. UnumProvident Corp., 261 F. App'x 316, 319 (2d Cir. 2008) ("[A] party is not required to authenticate documents on a summary judgment motion where . . . authenticity is not challenged by the other party." (citing H. Sand & Co. v. Airtemp Corp., 934 F.2d 450, 454 (2d Cir. 1991)).

Munich has provided additional admissible evidence that the Document is an accurate

version of the Certificate. In a supplemental affidavit filed in response to Utica's Motion to Strike,

Hill states that he is responsible for handling reinsurance claims from Utica, that he has reviewed

the underwriting file for the Certificate on "more than one occasion," that he is "familiar" with the

documents contained in that file, and that those documents are maintained by Munich "in the regular

course of its business as a reinsurance company." Dkt. No. 44 ("Hill Response Affidavit") ¶ 4.[8] He

has therefore, as to his assertion that the Document is a "true and accurate" copy of the Certificate,

demonstrated compliance with Federal Rule of Civil Procedure 56(c)'s requirement that affidavits

"must be made on personal knowledge." While Hill was not present when the Certificate was first

issued, his review of files where a copy of the Certificate would be kept in the ordinary course of

Munich's business suffices.[9] See N.H. Ins. Co. v. Blaze Const. Inc., No. 93-35096, 1994 WL

274032, at *1 (9th Cir. 1994) (refusing to strike affidavit authenticating document and noting that

manager of insurer could authenticate business records pertaining to insurance policy); Anwar v.

Fairfield Greenwich Ltd., 742 F. Supp. 2d 367, 372 n.3 (S.D.N.Y. 2010) (rejecting plaintiff's

_____

[8] Utica argues that the Hill Response Affidavit should be stricken as an improper
introduction of new evidence "in a reply." Dkt. No. 56 ("Strike Reply") at 2. But the Hill Response
Affidavit, at least with respect to the terms of the Certificate, does not introduce new substantive
evidence in support of its SJ Motion. Rather, it offers evidence of the authenticity of a document it
has already submitted—evidence directly responsive to authenticity questions Utica raised. This is
proper. Compare Rockport Co., Inc. v. Deer Stags, Inc., 65 F. Supp. 2d 189, 192 (S.D.N.Y. 1999)
(finding that filing of supplementary affidavit clarifying personal-knowledge basis for earlier
affidavit was proper); with Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C., 513 F. Supp.
2d 18, 19-20 (S.D.N.Y. 2007) (striking documents and related portions of affidavit introduced in
summary judgment reply brief because they constituted "new material").

[9] The Motion to Strike is therefore denied as to this part of Hill's Affidavit. Because the
Court need not consider the Hill Affidavit otherwise, the remainder of the Motion to Strike is denied
as moot.

argument that copies of agreements had not been properly authenticated where affiant stated that she had "review[ed]" those agreements); see also United States v. Wadena, 152 F.3d 831, 854 (8th Cir. 1998) (holding party authenticating a document "need only prove a rational basis for that party's claim that the document is what it is asserted to be").

Utica's arguments regarding the possibility that another conditions page was a part of the Certificate might, if considered, create a genuine dispute of material fact or necessitate additional discovery. See SJ Resp. at 25-26. However, Utica is bound by its admission. As a result, the only evidence in the record indicates that the Document is a copy of the Certificate. Munich has therefore demonstrated an absence of a genuine dispute of material fact regarding the Certificate's terms.

**B. Choice of Law**

The Certificate does not include a choice-of-law provision.[10] See generally Doc. Therefore the choice of law rules of New York, the state in which this diversity action was brought, govern. See Arkwright-Bos. Mfrs. Mut. Ins. Co. v. Calvert Fire Ins. Co., 887 F.2d 437, 439 (2d Cir. 1989). "The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." In re Allstate Ins. Co. (Stolarz), 613 N.E.2d 936, 937 (N.Y. 1993). Utica asserts that there is such a conflict: New Jersey and Connecticut law permit extrinsic evidence regarding the interpretation of a facially unambiguous contract, while New York does not. SJ Resp. at 27-30. Munich does not dispute that the asserted conflict of laws exits. See generally SJ Mem.; Dkt. No. 42 ("SJ Reply"). The Court therefore

---

[10] Utica argues that a complete copy of the Certificate might contain a choice of law provision. SJ Resp. at 27. But, as discussed *supra*, the accuracy of the Document has been established.

assumes that such a conflict exists and moves on to the choice-of-law analysis.

"It is well settled that New York has long recognized the use of center of gravity or grouping of contacts as the appropriate analytical approach to choice of law questions in contract cases." In re Liquidation of Midland Ins. Co., 947 N.E.2d 1174, 1178 (N.Y. 2011) (internal quotation marks omitted). "The purpose of grouping contacts is to establish which State has the most significant relationship to the transaction and the parties." Id. (internal quotation marks omitted). In conducting this analysis, New York courts look primarily to "the place of contracting, where the contract was negotiated, where the contract was to be performed, the location of the subject matter of the contract, and the domicile and place of business of the parties." St. Paul Fire & Marine Ins. Co. v. Employers Reins. Corp., 919 F. Supp. 133, 136 (S.D.N.Y. 1996).

Munich asserts that New York law indisputably governs interpretation of the Certificate; Utica contends that either New Jersey or Connecticut law may be applicable. See SJ Resp. at 28-29; SJ Reply at 19. While the analysis is not as clear-cut as Munich contends, the Court nonetheless concludes that there is sufficient evidence to conclude that New York law should apply and that Utica need not be granted further discovery on this issue.

The undisputed evidence demonstrates that the Utica "part" of every relevant factor weighs in favor of New York. Utica admits in the Complaint that it resides in New York and "at all relevant times, . . . was a New York corporation with a principal place of business in New York." Compl. ¶ 1. Utica has presented affirmative evidence indicating that it negotiated the Certificate, and requested that it issue, from New York. See Dkt. No. 22-5. As to performance of the Certificate, there is uncontroverted evidence that Utica has requested payment from, and received payment in, New York. See Dkt. No. 43-1; Nat'l Union Fire Ins. Co. of Pittsburgh, v. The Travelers

10

Indemnity Co., 210 F. Supp. 2d 479, 484 (S.D.N.Y. 2002) (finding that, where reinsured seeking recovery under reinsurance contract was a New York corporation, and payment would therefore be made to reinsured in New York, New York had the greatest interest in outcome of action); Callon Petroleum Co. v. Nat'l Indem. Co., No. 06-CV-0573, 2009 WL 2707304, at *3 (E.D.N.Y. Aug. 24, 2009) (noting that "it is fair" to find that the place of contract performance is the reinsured's domicile). Utica argues that the subject matter of the Certificate is its payments to Goulds under the Umbrella Policy, which were made in many different states. SJ Resp. at 29 n.16. Utica admits, however, that Goulds was "based" out of New York when the Umbrella Policy issued. SMF Resp. ¶ 5. Where liability insurance applies to risks in multiple states, the principal place of business of the insured has the greatest interest in those payments. See In re Liquidation, 947 N.E.2d at 1179. Thus, New York is the state with the greatest interest in Utica's payments to Goulds. Finally as noted *supra*, Utica has and had a principal place of business and place of incorporation in New York.

Utica has offered no evidence that its role in any of the relevant factors extended beyond New York—it has not shown, for example, that it signed or agreed to the Certificate in another state or that Munich's payments were received in another state. If such evidence existed, it would be in Utica's possession. Utica therefore cannot defeat the SJ Motion by asserting a need for discovery of such evidence. See Pedraza v. Alameda Unified Sch. Dist., No. C 05-4977, 2011 WL 5025121, at *2 (N.D. Cal. Oct. 20, 2011) ("[Plaintiffs] could have countered with evidence in their own possession . . . . They failed to do so"); Santiago v. Lloyd, 33 F. Supp. 2d 99, 105 (D.P.R. 1998) ("The Court is not persuaded by [p]laintiffs' request for 'discovery' regarding their own claim . . . . The information supporting [p]laintiffs' own claims . . . is and should be in their own possession.").

In contrast to the evidence of its wholly New York connections, Utica has proved too much by demonstrating that a *number* of states have some contacts with Munich's "part" of the choice-of-law factors. The Court must find the *one* state with the "*most* significant relationship to the transaction and the parties." In re Liquidation, 947 N.E.2d at 1178 (emphasis added). Utica has shown that Munich's contacts are divided among New Jersey, Connecticut, and Delaware: Utica offers evidence that the Munich employee responsible for negotiating and issuing the Certificate was located in Connecticut; that Munich has performed under the contract by reviewing Utica's billings in, and making payment from, New Jersey; and that Munich is incorporated in Delaware and New Jersey. See SJ Resp. at 28-29.[11]

The Court is therefore convinced that, even if further discovery revealed additional Munich connections to Connecticut or New Jersey, Munich's multi-state connections would be insufficient to overcome Utica's exclusively New York connections.[12]

**C. Substantive Law**

Under New York law, interpretation of a contract is a legal question for the court to decide. Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002) (citing K. Bell & Assocs. Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996)). "[A] written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal

---

[11] Utica acknowledges that Munich also has some connection to New York: "Munich . . . is licensed by the New York State Department of Financial Services to do business in New York, and Munich . . . conducts business in New York." Compl. ¶ 5.

[12] Further confirming the primacy of New York's interest is Utica's admission in its Complaint that "a substantial part of the events giving rise to th[e] Complaint occurred in [New York." Compl. ¶ 6; cf. Morgan Guar. Trust Co. of N.Y. v. Garrett Corp., 625 F. Supp. 752 (S.D.N.Y. 1986) (finding that New York courts would apply New York law based, *inter alia*, on Plaintiff's choice of a New York forum).

language they have employed." <u>Cruden v. Bank of N.Y.</u>, 957 F.2d 961, 976 (2d Cir. 1992). "Where . . . the contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." <u>Rainbow v. Swisher</u>, 527 N.E.2d 258, 258 (N.Y. 1988). "Contract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" <u>Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GMBH</u>, 446 F.3d 313, 316 (2d Cir. 2006) (quoting <u>Lightfoot v. Union Carbide Corp.</u>, 110 F.3d 898, 906 (2d Cir. 1997)). Unlike liability insurance policies, reinsurance contracts are not construed against the drafter. <u>See British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.</u>, 342 F.3d 78, 81-82 (2d Cir. 2003).

### D. Interpretation of the Certificate

Munich contends that, under three controlling cases, the Certificate's five-million dollar limit of liability unambiguously covers expenses. SJ Mem. at 15-19; SJ Reply at 20-22. Utica responds that these cases are inapposite and argues that: (1) the Certificate incorporates and adopts the Umbrella Policy's limit of liability and thereby implicitly adopts that limit's exclusion of expenses; and (2) the plain language of the Certificate excludes expenses from the limit of liability. SJ Resp. at 30-38. Utica further argues that, at the very least, the Certificate is ambiguous and Utica must therefore receive discovery regarding extrinsic interpretive evidence. SJ Resp. at 38.

#### 1. Three Controlling Cases and Presumption of Cost-Inclusiveness

In <u>Bellefonte Reins. Co. v. Aetna Cas. & Sur. Co.</u>, 903 F.2d 910 (2d Cir. 1990), <u>Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.</u> (<u>Unigard II</u>), 4 F.3d 1049 (2d Cir. 1993), and <u>Excess Ins. Co.</u>

Ltd. v. Factory Mut. Ins. Co., 822 N.E.2d 768 (N.Y. 2004), certificate limit-of-liability provisions silent as to whether they were expense-inclusive or -exclusive were deemed to be unambiguously expense-inclusive. Of particular note, Excess Insurance held that a certificate may exempt expenses from its limit of liability "by *expressly stating* that the defense costs [a]re excluded from the indemnification limit . . . . Failing this, . . . reinsurers [a]re entitled to rely on the policy limit as setting their maximum risk exposure." 822 N.E.2d at 772 (emphasis added).

The limit-of-liability provision in the Certificate is also silent as to its cost inclusiveness:

> D. *LIMIT OF LIABILITY CEDED TO AND ACCEPTED BY THE REINSURER* - *$5,000,000 excess of $5,000,000 of the liability shown in B. above.*

Doc. at 1. "[The] Court is bound . . . by decisions by the New York Court of Appeals and the Court of Appeals for the Second Circuit." Cowen & Co. v. Tecnoconsult Holdings Ltd., No. 96 CIV. 3748, 1996 WL 391884, at *4 n.3 (S.D.N.Y. Jul. 11, 1996). The Court therefore presumes that the Certificate's limit-of-liability provision is unambiguously cost-inclusive. Utica argues, however, that other provisions in the Certificate render Bellefonte, Unigard II, and Excess Insurance inapposite and demonstrate that the Certificate's limit of liability is cost-exclusive or, at the very least, ambiguous. SJ Resp. at 30-35.

### 2. Incorporation of the Umbrella Policy's Limit of Liability

Utica first argues that the Certificate's limit of liability, when read in conjunction with other provisions on the Declarations page, is "tied directly" to the Umbrella Policy's limit of liability. SJ Resp. Mem. at 30. It therefore argues that, because the Umbrella Policy's limit excludes expenses,[13] the portion of that limit accepted by Munich must exclude expenses as well. Id. The Certificate's

---

[13] The Court will assume, for purposes of deciding the SJ Motion, that Utica's interpretation of the Umbrella Policy's limit of liability as wholly cost-exclusive is correct.

14

limit-of-liability provision does explicitly reference the Umbrella Policy's limit of liability and assumes a portion of that limit:

> B.  <u>LIMIT OF LIABILITY STIPULATED IN COMPANY'S POLICY</u> - For each occurrence $25,000,000 for Personal Injury Liability . . . ; $25,000,000 annual aggregate where applicable in excess of the underlying insurance as shown in the Company's Policy or $25,000 for uninsured expenses.
>
> C.  <u>LIMIT OF LIABILITY RETAINED BY THE COMPANY OR REINSURED ELSEWHERE</u> - The first $5,000,000 plus $15,000,000 excess of $10,000,000 of the liability shown in B. above.
>
> D.  <u>LIMIT OF LIABILITY CEDED TO AND ACCEPTED BY THE REINSURER</u> - $5,000,000 excess of $5,000,000 of the liability shown in B. above.

Doc. at 1.  However, the Second Circuit and the New York Court of Appeals have implicitly rejected Utica's interpretation in finding that similarly worded certificate limits of liability do *not* incorporate the cost-exclusiveness of their respective reinsured policies' limits of liability.  The limit of liability of the certificate as issue in <u>Unigard II</u> was described as a portion of the reinsured policy's limit of liability: "$5,000,000 each occurrence and in the aggregate part of the $30 million coverage under [the reinsured policy]."  <u>Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.</u> ("<u>Unigard I</u>"), 762 F. Supp. 566, 571 (S.D.N.Y. 1991).  The certificate also contained an explicit "follow the form" clause stating the reinsurer's liability was to be "subject in all respects to the terms and conditions of the [reinsured policy]."  <u>Unigard II</u>, 4 F.3d at 1055.  The reinsured policy's limit of liability had been deemed cost-exclusive.  <u>See id.</u> at 1071; <u>Unigard I</u>, 762 F. Supp. at 594.  The district court therefore found that the certificate "incorporated by reference" this aspect of the reinsured policy's limit of liability and ordered the reinsurer to pay expenses in excess of the certificate's limit of liability.  <u>Unigard I</u>, 762 F. Supp. at 594.  The Second Circuit reversed, holding that the reinsured's obligation to pay for expenses above the reinsured policy's limit did not "alter

15

the terms" of the certificate and its limit of liability. Unigard II, 4 F.3d at 1071.[14]

In Bellefonte, decided three years earlier, the same interpretive approach was taken. The reinsured policy's limit was five-million dollars, $500,000 of which was reinsured by the reinsurer. 903 F.2d at 912. The certificate again described the certificate's limit of liability as a portion of the reinsured policy's limit of liability, noting that the "Reinsurance Accepted" was "$500,000 part of $5,000,000." Id. As in this case, the certificate further provided that the reinsured was to retain the unreinsured portion of the reinsured policy's limit of liability. Id. There was substantial evidence that the reinsured policy's limit of liability was cost-exclusive: the insured had sued the reinsured for expenses in excess of the limits of liability, and the reinsured had agreed to pay expenses in excess of those limits. Id. at 911. Nevertheless, the Second Circuit did not even consider the reinsured policy's limit of liability, instead holding that the certificate's limit of liability was a "cap on all payments under the certificate." Id. at 913.

The New York Court of Appeals also ignored the reinsured policy's limit of liability in Excess Insurance, in which a $7,000,000 portion of a $13,5000,000 policy was reinsured. 822 N.E.2d at 769; see id., 822 N.E.2d at 773 (Read, J., dissenting). Again, the certificate's limit of liability was described as a portion of the reinsured policy's limit of liability: "Limit: US$ 7,000,00 any one occurrence [part of] US$ 13,500,00 any one occurrence . . . ." Id. at 769 (majority opinion). Moreover, as in Unigard, the certificate contained an explicit follow-the-form clause stating that the certificate was "subject to same valuation, clauses and conditions as contained in the original policy

_____

[14] Utica, as discussed *infra*, attempts to distinguish Unigard II by arguing that the entire certificate at issue was explicitly "subject to" the limit of liability. SJ Resp. at 33. But the Second Circuit nevertheless had to determine whether the limit of liability to which the entire certificate was subject was expense-inclusive or -exclusive. In making that determination, it did not look to the reinsured policy's limit of liability.

or policies." Id. at 769. Nevertheless, the court did not even examine whether the reinsured

policy's limit of liability was cost-inclusive or -exclusive. See generally id.; id. at 773 & n.3 (Reed,

J., dissenting).

Utica has not argued that the Certificate's and Umbrella Policy's respective limits of liability

in this case are more closely "tied" to each other than the respective certificates' and reinsured

policies' limits of liability in Unigard II, Bellefonte, and Excess Ins. Co. The Court discerns no

meaningful distinction. If anything, the inclusion of a follow-the-form clause in the Unigard II and

Excess Insurance certificates—a clause that is not present in the Certificate here—indicates a closer

relationship. Utica's citation to the Second Circuit's summary order in Travelers Casualty & Surety

Co. v. ACE American Reinsurance Co., 201 F. App'x 40 (2d Cir. 2006) is unavailing for exactly

this reason. In Travelers, the certificate included a follow-the-form clause stating that "the terms

and conditions of liability of the [c]ertificate[] shall 'follow' those of the [p]olic[y], except as

otherwise specifically provided.'" Id., 201 F. App'x at 41. This clause therefore established a

presumption that the terms in the certificate would be defined identically to the terms in the

reinsured policy. Id. Because the certificate described the reinsured's liability under the reinsured

policy and the reinsurer's liability under the certificate using identical terms, the court held that the

certificate had not "otherwise specifically provide[d]" that the latter should be interpreted differently

than the former. Id. Here, there was no such follow-the-form clause, and therefore no explicit

presumption that terms used in the Certificate must be given the same meaning as they are in the

Umbrella Policy. Moreover, even if the Certificate did contain such a clause, it would not avail

Utica. Bellefonte and Mutual Insurance included such a clause and involved the exact issue here:

the cost-inclusiveness of a limit of liability. Nevertheless, the reinsured policies' limits of liability

17

were not relied upon in defining the certificates' limits of liability.  <u>Travelers</u>, however, involved a different issue: the proper definition for a specific term describing the time period to which the limit of liability applied.  <u>See</u> <u>id.</u> at 41.  <u>Bellefonte</u> and <u>Mutual Insurance</u>, as directly on-point authorities, must be followed.  The Court therefore determines that the Certificate's limit of liability provision does not adopt the purported cost-exclusion of the Umbrella Policy's limit of liability.

### 3. Absence of "Subject-To" Language

Both <u>Bellefonte</u> and <u>Unigard II</u> involved a reinsurance certificate that explicitly subjected the entire reinsurance agreement to the limit of liability.  <u>See</u> <u>Bellefonte</u>, 903 F.2d at 911; <u>Unigard II</u>, 4 F.3d at 1071.  In this case, there is no such broad "subject to" language appearing at the beginning of the Certificate.  The Certificate states at the top of the Declarations Page that reinsurance is provided "SUBJECT TO THE GENERAL CONDITIONS SET FORTH ON THE REVERSE SIDE."  The limit of liability, however, appears on the Declarations Page—the *same* side as this "subject to" language.  Thus, neither the overall provision of reinsurance nor liability for expenses is explicitly "subject to" the limit of liability.  But the absence of broad "subject to" language is not determinative.  Utica correctly notes that <u>Bellefonte</u> and <u>Unigard II</u> "relied heavily" on "subject to" provisions; however, the Second Circuit did so only to establish the primacy of the certificate limit-of-liability provision over other certificate provisions not at issue here: a follow-the-form provision in <u>Unigard II</u> and a provision in <u>Bellefonte</u> noting that the reinsurer was responsible for the payment of expenses "in addition" to its liability for settlements.  <u>Unigard II</u>, 4 F.3d at 1070-71; <u>Bellefonte</u>, 903 F.2d at 914; SJ Resp. at 33, 35.  Moreover, in <u>Excess Insurance</u>, the New York Court of Appeals found that, even in the absence of any "subject to" language, the certificate's limit of liability unambiguously constituted an expense-inclusive cap.  Thus, the failure of the Certificate to

18

explicitly subject either the entire provision of reinsurance or expense payments to the limit of

liability does not suffice to demonstrate cost-exclusion or ambiguity.

### 4. Exclusion by Omission

Utica's strongest argument is that the Certificate, by omission, excludes expenses from the

limit of liability. SJ Resp. at 31-32. The first three conditions of the Certificate are as follows:

> 1. [Munich] agrees to indemnify [Utica] against losses or damages which [Utica] is
> legally obligated to pay under the policy reinsured, resulting from occurrences taking
> place during the period this Certificate is in effect, *subject to the reinsurance limits
> shown in the declarations*. . . .

> 2. [Utica] shall settle all claims under its policy in accordance with the terms and
> conditions therefore. . . . If the reinsurer hereunder is excess, the reinsurer shall be
> liable for its excess proportion of settlements made by [Utica] . . . .

> 3. Munich shall be liable for its proportion of allocated loss expenses incurred by
> Utica in the same ratio ration that [Munich's] share of the settlement or judgment
> bears to the total amount of such settlement or judgment under the policy reinsured.
> The term "allocated loss expenses" means all expenses incurred in the investigation,
> adjustment and litigation of claims or suits . . .

Conditions Page (emphasis added). Utica correctly notes that the first condition explicitly subjects

Munich's payment of "losses or damages" to the limit of liability, while the third condition does not

so subject Munich's payment of "allocated loss expenses." Resp. Mem at 31. It therefore reasons

that, by implication, only losses or damages, rather than expense payments, are subject to the limit

of liability. Id. But, as noted *supra,* the New York Court of Appeals has held that where there is a

limit-of-liability clause, a certificate exempts expenses from that clause "by *expressly stating* that

the defense costs [a]re excluded from the indemnification limit . . . . Failing this, . . . reinsurers

[a]re entitled to rely on the policy limit as setting their maximum risk exposure." Express

Insurance, 822 N.E.2d at 772. The Certificate's omission of language subjecting expenses to the

limit of liability, even when contrasted with its inclusion of language so subjecting losses, does not

constitute the requisite "express" statement of exclusion.  See BLACK'S LAW DICTIONARY (9th ed.

2009) (defining "express" as "[c]learly and unmistakably communicated; directly stated").

Moreover, not only does the Certificate fail to expressly exclude expenses from the limit of

liability, it affirmatively indicates that the limit of liability is applicable to expenses: the limit is

described as a "limit of *liability*," as opposed to, e.g., a "limit of loss," while the third condition

states the that Munich "shall be *liable* for its proportion of allocated loss expenses."

The Certificate's second condition, which covers Munich's liability for settlement payments

made by Utica, also indicates that Utica's interpretation cannot be correct.  This condition does not

explicitly subject settlement liability to the limit of liability.  Thus, according to Utica's position

that only provisions explicitly made subject to the limit of liability are so subject, Munich's liability

for settlement payments could exceed the limit of liability.  Yet Utica has repeatedly acknowledged

that, under both the Umbrella Policy and the Certificate, settlement payments *are* subject to the

applicable limit of liability.  See, e.g., SJ Resp. at 3 (" Utica made loss payments and expense

payments under the . . . Umbrella Policy.  Loss payments are payment for *settlements of* or

judgement in the asbestos cases." (emphasis added and citation omitted)); id. at 30 (arguing that the

Certificate's and Umbrella Policy's treatments of losses and expenses are identical).

Utica cites Aetna Casualty and Surety Co. v. Home Insurance Co., No. 89 Civ. 7043, 1992

WL 321631 (S.D.N.Y. Oct. 30, 1992), in support of its exclusion-by-implication argument.

However, Aetna was decided twelve years before Excess Insurance and its pronouncement of an

"express statement" standard for limit-of-liability cost-exclusiveness.  Moreover, the certificate at

issue in Aetna contained language arguably constituting such an express statement.  The conditions

page subjected "ultimate net loss payments" to the limit of liability.  Aetna, 1992 WL 321631, at *2.

"Ultimate net loss" was then explicitly defined to *exclude* expenses.  Id.  The court therefore

deemed the agreement ambiguous as to the limit's application to expenses, noting that the "clear

exclusion of expenses from the dollar limitations" distinguished the certificate from the certificate

at issue in Bellefonte  Id.  There is no such clear exclusion here.  The Certificate, like the Aetna

certificate, explicitly subjects loss payments to the limit of liability.  But unlike the Aetna

certificate, the Certificate does not define the "losses" so subjected, let alone explicitly define those

losses to *exclude* expenses.[15]

The Court therefore determines that the Certificate's limit of liability unambiguously applies

to expenses.

### 4. Custom and Practice Evidence

Utica argues that, even if the Certificate is not facially ambiguous, evidence of custom and

practice should be considered in its interpretation.  SJ Resp. Mem. at 36 n.18. The weight of

authority is against Utica's contention.  "Under New York law, evidence of custom or practice may

---

[15] Defendant's citation to Penn Re, Inc. v. Aetna Casualty and Surety Co., No. 85-385, 1987 WL 909519 (E.D.N.C. June 30,1987), and Employers Insurance Co. of Wausau v. American Reinsurance Co., 256 F. Supp. 2d 923 (W.D. Wis. 2003), is also unavailing.  In Penn Re, the finding that expenses were not included in the certificate's liability cap was premised on certificate language stating that the reinsurer was liable for expenses "in addition to" liability for claims.  Penn Re,, 1987 WL 909519, at *9.  There is no such language at issue here.  Moreover, the Second Circuit explicitly rejected Penn Re's interpretation of this language, deeming it an indication merely that expenses are another type of liability and therefore subject to the limit of liability.  See Unigard II, 4 F.3d 1049, 1055, 1070-21; Bellefonte, 903 F.2d at 913-14 .

Employers Insurance is also inapposite.  At issue was whether costs expended by the reinsured in defending against a declaratory judgment action by the insured were included in the certificate's coverage of expenses.  256 F. Supp. 2d at 924-25.  The court determined that they were and ordered the reinsurer to pay those costs—costs which, when combined with moneys the reinsurer had already expended, exceeded the reinsurance limits in the certificate.  Id. at 925-26. But whether expenses were subject to that limit was not at issue or discussed in any way.  See generally id.  The case therefore sheds little light on the issue before the Court.

be admissible only if the agreement is found to be ambiguous.  Moreover, such evidence should not

be admitted to create an ambiguity in an otherwise clear and unambiguous agreement.  [Where an]

[a]greement is unambiguous, there is no occasion to consider evidence of custom or practice."

Katel Ltd. Liab. Co. v. AT & T Corp., 607 F.3d 60, 66 (2d Cir. 2010) (citations and internal

quotation marks omitted); see also Croce v. Kurnit, 737 F.2d 229, 238 (2d Cir. 1984) "([E]vidence

of industry practice may not be used to vary the terms of a contract that clearly sets forth the rights

and obligations of the parties.").  While Utica correctly notes that World Trade Center Properties,

L.L.C. v. Hartford Fire Insurance Co. condoned the use of such evidence in identifying ambiguity, it

did so only to define a single word: "occurrence." 345 F.3d 154, 185-86 (2d Cir. 2003).  The

meaning of a single word or phrase is not at issue here.  Moreover, consideration of custom or

practice evidence is particularly inappropriate in this case, for two related reasons.  First, Bellefonte,

Unigard II, and Excess Insurance did not consider evidence of custom or practice, thereby

suggesting that, at least with respect to a limit-of-liability provision silent as to its coverage of

expenses, such evidence should not be relied upon.  See Bellefonte, 903 F.2d at 912-14; Unigard II,

4 F.3d at 1070-71; Excess Insurance, 822 N.E.2d at 771-73; id. at 775, 777 (Read, J., dissenting)

(noting that the majority had ignored evidence of custom in interpreting the certificate).  Second,

Utica's customs-and-practice evidence does not relate to the specific language of the Certificate or

suggest that the Certificate should be interpreted differently than the certificates in Bellefonte,

Unigard II, and Excess Insurance.  Rather, Utica's customs evidence purports to demonstrate that

Bellefonte, Unigard II, and Excess Insurance were erroneously decided, because they established a

presumption of cost-inclusiveness at odds with the reinsurance industry's customs and practices.

See SJ Resp. at 37.  Whatever the merits of this assertion, any such error is for the Second Circuit

and the New York Court of Appeals, not the Court, to remedy.

### E. Waiver

Finally, Utica argues that Munich has waived its cost-inclusive argument by previously paying Utica for expenses above the Certificate's limit of liability. <u>See</u> SJ Resp. at 60. But "[Utica] has overlooked a major limitation of the waiver doctrine. As New York courts have explained, the waiver doctrine is inapplicable if 'the issue is the existence or nonexistence of coverage.'" <u>Nat'l Union Fire Ins. Co.</u>, 210 F. Supp. 2d 479, 485 (quoting <u>Albert J. Schiff Assoc., Inc. v. Flack</u>, 425 N.Y.S.2d 612, 618 (1980)). Here, Munich argues that the Certificate does not cover the expenses at issue. This argument cannot be waived.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 22) for summary judgment is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Motion (Dkt. No. 29) for continuation of discovery is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Motion (Dkt. No. 27) to strike is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      September 30, 2013
                 Albany, NY

Lawrence E. Kahn
U.S. District Judge

23