**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

UTICA MUTUAL INSURANCE COMPANY,

                             Plaintiff,                6:12-cv-00196 (BKS/ATB)

v.

MUNICH REINSURANCE AMERICA, INC.,

                             Defendant.

_____

MUNICH REINSURANCE AMERICA, INC.,

                             Plaintiff,                6:13-cv-00743 (BKS/ATB)

v.

UTICA MUTUAL INSURANCE COMPANY,

                             Defendant.

_____

**Appearances:**

Mary Beth Forshaw
Christopher G. Lee
Simpson, Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
For Utica Mutual Insurance Company

Syed S. Ahmad
Patrick M. McDermott
Hunton & Williams LLP
2200 Pennsylvania Avenue NW
Washington, D.C. 20037
For Utica Mutual Insurance Company

Bruce M. Friedman
Crystal D. Monahan
Jason B. Eson
Rubin, Fiorella & Friedman LLP
630 Third Avenue, 3rd Floor
New York, NY 10017
For Munich Reinsurance America, Inc.

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

These related diversity breach of contract actions arise from disputes between Utica

Mutual Insurance Company ("Utica") and Munich Reinsurance America, Inc. ("Munich")

regarding monies owed under the terms of the facultative reinsurance certificates Munich issued

to Utica in 1973 (No. 12-cv-196) and 1977 (No. 13-cv-743).[1] Presently before the Court are the

parties' motions in limine. (Dkt. Nos. 332, 344, 346, 352–356).

## II.    PROCEDURAL AND FACTUAL BACKGROUND

The Court assumes familiarity with the procedural and factual background of this case, as

set forth in its March 20, 2018, Decision.[2] *Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.* (*Utica

I*), No. 12-cv-00196, No. 13-cv-743, 2018 WL 1737623 (N.D.N.Y. Mar. 20, 2018).[3]

---

[1]For convenience, unless otherwise specified, docket citations are to the filings in 6:12-cv-196.

[2]The Court refers to the 1973 facultative reinsurance certificate as the "1973 Certificate," the 1977 facultative reinsurance certificate as the "1977 Certificate," the 1973 umbrella policy as the "1973 Umbrella," and the 1977 umbrella policy as the "1977 Umbrella."

[3]No LEXIS citation available.

III.    **DISCUSSION**

A.    **Munich's Motions in Limine**

1.    **Motion to Preclude Evidence of Follow the Fortunes and Follow the Settlements (Dkt. No. 332)**

In ruling on the parties' motions for summary judgment, the Court noted that it was undisputed that neither Certificate contained a follow-the-fortunes or follow-the-settlements provision. *Utica I*, 2018 WL 1737623, at *21–22.[4] Further, the Court declined, "[o]n this record," "to imply a follow-the-settlement clause into the reinsurance certificates." *Id*. at *22. Concerned that the "Court appears to have left the door slightly ajar to permit Utica . . . to come forth with evidence establishing that following clauses are implied in the Certificates as a matter of custom and practice," Munich filed a motion in limine seeking to preclude Utica from presenting any evidence on this issue at trial. (Dkt. No. 332). Utica opposes Munich's motion. (Dkt. No. 334). The Court held oral argument on the motion and directed further briefing. (Dkt. No. 340). After carefully considering the parties' arguments, the Court denies Munich's motion. The Court will allow Utica to present evidence at trial as to whether the doctrines of follow the fortunes or follow the settlements were, at the time the parties agreed to the Certificates, so "fixed and invariable" in the reinsurance industry as to be part of the Certificates. *British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 342 F.3d 78, 84 (2d Cir. 2003) (quoting *Belasco Theatre Corp. v. Jelin Prods., Inc.*, 270 A.D. 202, 205 (1st Dep't 1945)).

---

[4] The follow-the-fortunes doctrine "binds a reinsurer to accept the cedent's good faith decisions on all things concerning the underlying insurance terms and claims against the insured: coverage, tactics, lawsuits, compromise, resistance or capitulation." *N. River Ins. Co. v. Ace Am. Reins. Co.*, 361 F.3d 134, 139–40 (2d Cir. 2004). The follow-the-settlements doctrine binds the reinsurer: (1) to the cedent's good faith settlements that are "at least arguably within the scope of the insurance coverage that was reinsured," *Mentor Ins. Co. (U.K.) v. Brannkasse*, 996 F.2d 506, 517 (2d Cir. 1993); and also (2) to the cedent's reasonable post-settlement allocation decisions, *U.S. Fid. & Guar. Co. v. Am. Re-Ins. Co.*, 20 N.Y.3d 407, 421–22 (2013).

As the Court noted in its summary judgment ruling, reinsurance contracts are "governed by the same principles that govern contracts generally." *Glob. Reins. Corp. of Am. v. Century Indem. Co.*, 30 N.Y.3d 508, 518 (2017); *see Glob. Reins. Corp. of Am. v. Century Indem. Co.*, 890 F.3d 74, 77 (2d Cir. 2018) (explaining that, when interpreting facultative reinsurance contracts, "courts must 'look to the language of the policy above all else,' in determining its meaning" (quoting *Glob. Reins. Corp. of Am.*, 30 N.Y.3d at 518)).

Utica seeks to imply a follow-the-fortunes or follow-the-settlements clause into the parties' contract based upon the "custom and practice" opinion of its experts, Andrew Maneval, Paul Feldsher, and Debra Roberts. (Dkt. No. 334, at 12). Andrew Maneval states in his report that:

> Reinsurance contracts are understood in the industry to be governed by a principle requiring that the reinsurer 'follow the fortunes' of the ceding company. In the context of payments made to underlying insured, the reinsurer is generally understood to be obligated to 'follow the settlements' made by the ceding company. . . . While these principles are frequently expressed in writing in reinsurance contracts, as a matter of custom and practice in the industry, generally they are considered to be applicable to reinsurance contracts even if specific reference is not made to them in the contract.

(Dkt. No. 301-67, ¶ 14). Paul Feldsher opines that a "basic and customary tenant" of the insurance and reinsurance industry "is that reinsurers generally follow the fortunes of the cedents' settlements and handling claims." (Dkt. No. 301-76, ¶ 28). Debra Roberts states that she "disagrees with [Munich's expert's] conclusion that these reinsurance certificates do not contain any implied follow-the-fortunes or follow-the-settlements concepts, as it is my opinion that all reinsurance contracts, unless expressly stated otherwise, follow the fortunes or settlements of the underlying coverage." (Dkt. No. 301-62, ¶ 25).

Utica asserts that one of Munich's own experts "agrees" with this assessment, citing to the testimony of Daniel Schmidt. (Dkt. No. 334, at 15). Schmidt opined that Munich would be obligated to indemnify Utica "[i]f the settlement were reasonably consistent with the terms and conditions of the underlying policies (and the 1973 and 1977 certificates)." (Dkt. No. 301-50, at 14). Schmidt also opined, however, that it "clearly is not a matter of widespread industry and custom and practice" that an implied follow-the-fortunes provision binds a reinsurer to follow all of a ceding company's "allocation decisions, including post-settlement, regarding how it will choose to allocate its loss payments in respect of its available reinsurance coverage." (Dkt. No. 313-82, at 13).

"[T]he burden of proving a trade usage has generally been placed on the party benefiting from its existence." *British Int'l Ins. Co.*, 342 F.3d at 83 (quoting *Putnam Rolling Ladder Co. v. Mfrs. Hanover Tr. Co.*, 74 N.Y.2d 340, 348 (1989)). "Under New York law . . . custom and usage evidence must establish that the omitted term is 'fixed and invariable' in the industry in question." *Hutner v. Greene*, 734 F.2d 896, 900 (2d Cir. 1984) (quoting *Belasco Theatre Corp.*, 270 A.D. at 205). "One who seeks to use trade usage to . . . annex a term to a contract must show either that the other party to the contract is actually aware of the usage, or that the existence of the usage in the business to which the transaction relates is so notorious that a person of ordinary prudence in the exercise of reasonable care would be aware of it." *Reuters Ltd. v. Dow Jones Telerate, Inc.*, 231 A.D.2d 337, 343 (1st Dep't 1997). "The trade usage must be 'so well settled, so uniformly acted upon, and so long continued as to raise a fair presumption that it was known to both contracting parties and that they contracted in reference thereto.'" *British International*, 342 F.3d at 84 (quoting *Reuters*, 231 A.D. 2d at 343–44).[5]

---

[5] The case law Utica cites concerning implied-in-fact covenants does not address the admission of expert testimony at issue here. *See, e.g., Rowe v. Great Atl. & Pac. Tea Co., Inc.*, 46 N.Y.2d 62, 69 (1978) ("[A] party who asserts the

The existence of an industry custom is "in the first instance a question of fact," *Aetna Cas. & Sur. Co. v. Home Ins. Co.*, 882 F. Supp. 1328, 1349 (S.D.N.Y. 1995), and the party seeking to rely on such custom must present sufficient evidence to create a triable issue of fact. *Hutner*, 734 F.2d at 900. Munich argues that Utica's experts' opinions concerning the follow-the-fortunes and follow-the-settlement doctrines at best identify a general custom and practice and thus fall short of the "fixed and invariable" standard. Maneval, for example, opines that "*generally*" where, as here, a reinsurance certificate does not contain a follow-the-fortunes or follow-the-settlement provision, such provisions are still "considered to be applicable." (Dkt. No. 301-67, ¶ 14). Similarly, Feldsher states that "reinsurers *generally* follow the fortunes of the cedents' settlements and handling claims." (Dkt. No. 301-76, ¶ 28). Although Roberts unequivocally asserts that "all reinsurance contracts, unless expressly stated otherwise, follow the fortunes or settlements of the underlying coverage," (Dkt. No. 301-62, ¶ 25), her opinion is not supported by further explanation or specific facts. The Court notes that the parties, who are highly sophisticated and represented by able counsel, did not raise this issue at the summary judgment stage. While Utica may ultimately be unable to show the follow-the-fortunes and follow-the-settlements doctrines were fixed and invariable in the reinsurance industry at the time the parties agreed to the Certificates, the Court declines to entertain what is, in essence, a second motion for summary judgment just prior to trial. Accordingly, Munich's motion to preclude evidence concerning follow the fortunes or follow the settlements, (Dkt. No. 332), is denied. Two additional points Utica raised in its briefing, however, require further discussion.

---

existence of an implied-in-fact covenant bears a heavy burden, for it is not the function of the courts to remake the contract agreed to by the parties, but rather to enforce it as it exists. Thus, a party making such a claim must prove . . . that the particular unexpressed promise sought to be informed is in fact implicit in the agreement viewed as a whole."); *Voss v. Bank of Am., N.A.*, No. 15-cv-0232, 2015 WL 9581832, at *7, 2015 U.S. Dist. LEXIS 173143, at *22 (N.D.N.Y. Dec. 30, 2015) (noting that under implied covenant of good faith and fair dealing, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" (quoting *Kirke La Shelle Co. v. Armstrong Co.*, 263 N.Y. 79, 87 (1933))).

First, Utica asserts that "the Court must consider custom and practice to assess whether an ambiguity exists" in the contract language. (Dkt. No. 357, at 7). While this is a correct statement of the law, *see Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 180 (2d Cir. 2014) ("Evidence of trade practice and custom may assist a court in determining whether a contract provision is ambiguous in the first instance."), Utica has failed to explain how that principle applies here. The cases Utica cites in support of its assertion are inapposite. *See Int'l Multifoods Corp.*, 309 F.3d at 87 (where "competing inferences . . . can be drawn from the language" of the policy, contract is facially ambiguous and evidence probative of parties' intent, including evidence of custom and usage may be considered); *Seven Star Shoe Co., Inc. v. Strictly Goodies, Inc.*, 657 F. Supp. 917, 920–21 (S.D.N.Y. 1987) (considering business custom and usage on what it means in the shoe business to be a sales "representative").

Second, Utica contends that the custom and practice need not be "fixed and invariable" and that it need only show a "custom and practice that is '*generally understood* in the particular trade or business.'" (Dkt. No. 357, at 13 (quoting *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 617 (2d Cir. 2001)). As Utica acknowledges, however, the "generally understood" standard only applies to the determination and resolution of an ambiguity. (*Id.* at 13). Here, Utica has not identified a "word or phrase" in the Certificates "capable of meaning" that Munich is required to follow the fortunes or follow the settlements. *Hugo Boss*, 252 F.3d at 617. Indeed, any such terms are wholly absent from the Certificates. Therefore, to import the follow-the-fortunes or follow-the-settlements doctrines into the Certificates, Utica must show that they are a "fixed and invariable" custom and practice of the reinsurance industry.

### 2.    Motion to Preclude Certain Testimony by Utica's Experts (Dkt. No. 344)

As discussed below, many of the issues Munich raises in its motion to preclude testimony by Utica's experts (Dkt. No. 344) and in its motion concerning general evidentiary issues (Dkt. No. 346) are premature, overly broad in scope, and lack factual context and are therefore best resolved at trial in the context of trial evidence. *See Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 140 (S.D.N.Y. 2003) ("Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds."); *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 95-cv-3901, 1999 WL 946354, at *7, 1999 U.S. Dist. LEXIS 16035, at *22 (S.D.N.Y. Oct. 19, 1999) ("[A]lthough defendant is correct that neither expert nor lay witnesses may testify as to conclusions of law, this motion is premature."); *see also United States v. Goodale*, 831 F. Supp. 2d 804, 808 (D. Vt. 2011) ("The trial judge may reserve judgment on a motion in limine until trial to ensure the motion is considered in the proper factual context.").

### a.    Custom and Practice

Munich seeks an order precluding Utica from introducing trial testimony by three of its experts, Andrew Maneval, Paul Feldsher, and Debra Roberts, "about various alleged industry customs and practices." (Dkt. No. 344, at 3). Specifically, Munich argues that preclusion of these experts' testimony is required because their opinions concerning custom and practice are inconsistent "with how courts within the Second Circuit define custom and practice," lack "validation" and "foundation," and "overuse and misuse the concept of custom and practice." (Dkt. No. 344, at 4). Utica opposes this motion. (Dkt. No. 375).

### i.    Declaratory Judgment Expenses

At the summary judgment stage, the Court found that the language in the Certificates concerning Munich's obligation to pay expenses was ambiguous, and that extrinsic evidence was required to determine whether expenses included declaratory judgment expenses. *Utica I*, 2018 WL 1737623, at *19–20. Presently before the Court is Munich's motion to preclude Maneval from testifying that there was a custom and practice in the reinsurance industry of "treating broad descriptions of 'expenses' in reinsurance contracts to include [declaratory judgment] expenses." (Dkt. No. 344, at 6; Dkt. No. 301-67, ¶ 49). Munich argues that because Utica must establish that the practice of including declaratory judgment expenses in reinsurance contracts was "fixed and invariable" and Maneval concedes that not all companies adopted that custom and practice, his testimony on this issue should be precluded. (Dkt. No. 344, at 6). Utica opposes this motion. (Dkt. No. 375, at 11).

"The trial court has always had broad latitude over the admission of evidence and it has been particularly broadened with respect to the admissibility or exclusion of expert evidence. This principle of broad discretion is never more evident where the court has to determine if the expert testimony will be helpful to the fact finder." *Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*, 321 F. Supp. 2d 469, 473 (N.D.N.Y. 2004) (citations omitted). Where, as here, the expert will testify at a bench trial, courts are more willing to admit expert testimony, with the understanding that the testimony can be given only the weight that it deserves, or excluded in whole or in part, after the trial as necessary. *See CDR-Wantagh, Inc. v. Shell Oil Co.*, No. 07-cv-4497, 2011 WL 795865, at *9, 2011 U.S. Dist. LEXIS 19717, at *23–24 (E.D.N.Y. Feb. 28, 2011) (citing *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07-cv-5804, 2009 WL 959775, at *6 n.3, 2009 U.S. Dist. LEXIS 30458, at *16 n.3 (S.D.N.Y. Apr. 8,

2009). "It is not that evidence may be less reliable during a bench trial; it is that the court's gatekeeping role is necessarily different. Where the gatekeeper and the factfinder are one and the same—that is, the judge—the need to make such decisions prior to hearing the testimony is lessened." *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) (citing *United States v. Brown*, 415 F.3d 1257, 1268–69 (11th Cir. 2005)).

In this case, Munich contends that Maneval's testimony is equivocal and thus fails to show that the inclusion of declaratory judgment expenses was a fixed and invariable custom and practice at the time the Certificates were issued. To prevail on its interpretation, Utica must, as Munich argues, establish a "fixed and invariable" usage of which Munich was or should have been aware. *See Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 134–35 (2d Cir. 2006); *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466–67 (2d Cir. 2010). However, as this is a bench trial, and Munich's arguments largely challenge the credibility of Maneval's testimony and the weight to which is entitled, Munich's motion to preclude at this time is denied.

    **ii.**   **Notice of Mid-Term Changes to Reinsured Policies**

Munich seeks to preclude Utica from offering "expert testimony on some alleged custom and practice regarding the manner in which cedents in the 1970s notified reinsurers about mid-term changes to reinsured policies." (Dkt. No. 344, at 6). Specifically, Munich seeks to preclude the introduction of Feldsher's opinion concerning notification of changes in the 1970s on the ground that it is "internally inconsistent," (*id.* at 7), and Maneval's testimony that there was a custom and practice of providing notification "at meetings or by telephone" on the ground that it is "flimsy" and thus fails to establish "a universal and accepted practice in the 1970s," (*id.* at 8 (quoting Dkt. No. 301-75, ¶ 26)). Utica opposes Munich's motion. (Dkt. No. 375, at 13–14).

Expert testimony regarding "the ordinary practices in an industry" is appropriate if it helps a fact finder evaluate a party's conduct "against the standards of accepted practice." *United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester County*, No. 06-cv-2860, 2009 WL 1110577, at *3, 2009 U.S. Dist. LEXIS 33709, at *8 (S.D.N.Y. Apr. 22, 2009); *see Marx & Co. Inc. v. Diners' Club Inc.*, 550 F.2d 505, 508–09 (2d Cir. 1977); *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 238 F. Supp. 3d 314, 341–43 (N.D.N.Y. 2017). Further, as discussed, arguments concerning the consistency or strength of an expert's testimony are matters for the finder of fact to consider when determining the weight to assign the testimony and are not, in this case, grounds for preclusion. Accordingly, Munich's motion to preclude is denied.

### iii.    Materiality of Defense Endorsement

Munich seeks to preclude Utica from offering expert testimony "for the proposition that the change effected by the mid-term Defense Endorsement—to provide defense costs in addition to policy limits—was not a material change, and that industry custom and practice would not have required Utica [to] notify its reinsurers of the Defense Endorsement." (Dkt. No. 344, at 8). Munich contends that because the 1973 Certificate's requirement that Utica "notify the Reinsurer [Munich] promptly of any changes" to the 1973 Umbrella, (Dkt. No. 301-33, at 2), is clear and unambiguous, the Court "should not consider extrinsic evidence in the form of expert testimony that modifies the parties' contract to only require Utica to notify [Munich] about 'material mid-term changes' to reinsured policies," (Dkt. No. 344, at 8). At the summary judgment stage, Munich centered its arguments on the principles of contract modification, and the Court found that Munich had "adduced evidence that when there were changes to a reinsured policy, it would refer such changes to underwriters, who 'would respond with an endorsement of the change to the certificate that reinsured that policy.'" *Utica I*, 2018 WL 1737623, at *16. The Court further

noted the caselaw regarding a reinsured's obligation to disclose to potential reinsurers facts that materially affect a reinsurer's risk, and concluded that there were "triable issues of fact as to whether the addition of the Defense Endorsement was a material change to Munich." *Id.*; *see Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 278 (2d Cir. 1992) ("The relationship between a reinsurer and a reinsured is one of utmost good faith, requiring the reinsured to disclose to the reinsurer all facts that materially affect the risk of which it is aware and of which the reinsurer itself has no reason to be aware."). Munich challenges both Utica's billings based upon the mid-term endorsement, and Utica's good faith in failing to inform Munich about the endorsement. (Dkt. No. 345 at 18, 55–61). Thus, expert evidence is admissible with respect to the materiality of the Defense Endorsement.[6] Accordingly, Munich's motion to preclude is denied.

### iv.    Utica's Compliance with 1970s Customs and Practices

Munich seeks to preclude any testimony by Maneval concerning Utica's alleged compliance "with industry custom and practice in the 1970s in the manner in which it reported and provided information" to Munich on the basis that Maneval "failed to identify what the custom and practice was." (Dkt. No. 344, at 9). Munich challenges the reliability and credibility of Maneval's testimony on this issue. (*Id*. at 10). Utica disputes Munich's characterization of Maneval's report, (Dkt. No. 375 at 17–18), and at this juncture it appears that the testimony would be helpful to the Court. Accordingly, Munich's motion is denied without prejudice to renewal at trial.

---

[6]The Court need not address Utica's argument, raised for the first time in opposition to Munich's motion in limine, that the evidence is admissible to "show that the phrase 'any changes,' when construed from the context of persons knowledgeable of custom and practice in the reinsurance industry, refers to material changes because reinsurers would not want to receive every single change like those related to correcting a zip code or fixing a typo." (Dkt. No. 375, at 15).

### v.     Application of Follow the Settlements to Cedent's Allocation

Munich seeks an order precluding Maneval's testimony concerning the application of follow the settlements to a cedent's allocation on the ground that such testimony is inconsistent with Utica's assertion that it is relying on follow the fortunes and is, in any event, a legal determination. (Dkt. No. 344, at 10–11). At this juncture, Maneval's testimony regarding custom and practice in the industry regarding follow the settlements would appear to be of assistance to the Court. Accordingly, Munich's motion is denied without prejudice to renewal at trial.

### vi.     Utica's Business Practices and Procedures

Munich argues that Maneval's "characterizations of Utica's use of data in claims systems and Utica's verification of its bills to reinsurers as industry custom and practice are patently improper, such testimony must be precluded at trial." (Dkt. No. 344, at 14). The Court will permit expert testimony regarding "the ordinary practices in an industry" if it helps the Court evaluate a party's conduct "against the standards of accepted practice." *Anti-Discrimination Ctr.*, 2009 WL 1110577 at *3, 2009 U.S. Dist. LEXIS 33709, at *8; *see Marx & Co. Inc.*, 550 F.2d 508–09; *Utica Mut. Ins. Co.*, 238 F. Supp. 3d at 341–43. At this juncture, it appears that Maneval has testimony regarding industry practices that would be of assistance to the Court. Accordingly, Munich's motion is denied without prejudice to renewal at trial.

### b.     Legal Matters

### i.     Reasonability of Allocation and Billings

Munich seeks to preclude expert testimony by Maneval and Feldsher regarding the reasonability and good faith of Utica's allocation of settlement payments among primary and umbrella policies and billings to Munich. (Dkt. No. 344, at 15). Munich asserts that these "are

13

the ultimate legal issues to be determined by the Court." (*Id.*). Utica opposes Munich's motion and argues that the reasonableness of Utica's billing and allocation decisions present questions of fact. (Dkt. No. 376, at 7).

The law of the Second Circuit "is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992). Expert testimony is admissible, however, where it addresses an issue of fact and will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Like all evidence, expert testimony must be relevant, meaning that it "has the tendency to make a [material] fact more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

"Experts may testify on . . . mixed questions of fact and law." *Fiaturuolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993). Although expert testimony "is not objectionable merely 'because it embraces an ultimate issue to be decided by the trier of fact,'" the court should "guard against 'the admission of opinions which would merely tell the jury what result to reach.'" *Fiaturuolo*, 8 F.3d at 941 (quoting Fed. R. Evid. 705 & advisory committee notes to Fed. R. Evid. 704); *see also United States v. Bilzerian*, 926 F.2d 1285, 1294–95 (2d Cir. 1991) (stating that "[a]s a general rule an expert's testimony on issues of law is inadmissible," but holding that the district court did not err in admitting expert testimony regarding federal securities regulation where the expert "did not give his opinion as to whether [the defendant's] actions violated the securities laws").

Opinion testimony that arguably states a legal conclusion may be helpful and admissible if the case involves a specialized industry. *See* 4 Weinstein's Federal Evidence § 704.04[2][a] (2d ed. 2016); *see also In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 190–91

(S.D.N.Y. 2009) (allowing expert testimony on compliance with FDA regulations where the expert's "assessment of the reasonableness of [the defendant's] conduct in light of her experience and her understanding of FDA regulations [would] be helpful to the jury"); *Am. Home Assur. Co. v. Merck & Co., Inc.*, 462 F. Supp. 2d 435, 451 (S.D.N.Y. 2006) (admitting expert testimony on FDA regulations where the court was "persuaded that [the expert's] testimony on these complex regulatory provisions [would] assist the trier of fact").

Regardless of whether the opinion offered is purely factual or a mix of fact and law, the Court concludes that an expert's factual analysis of Utica's actions in allocating expenses and billing reinsurers would be helpful in resolving issues regarding allocation and billing practices. Because a bench trial is to be conducted, there is no danger that a jury would give too much credence to an expert's opinion or that an expert will usurp the Court's role in determining the law. Accordingly, Munich's motion is denied.

### ii.        Reasonability of Utica's Coverage Determinations

Munich moves to preclude any expert testimony on the issue of whether "Utica's coverage determinations were reasonable" on the ground that this is a legal issue for the Court. (Dkt. No. 344, at 17). As the issue arises in the context of a bench trial, the Court will allow expert testimony regarding the reasonableness of Utica's decisions and its billings. Accordingly, Munich's motion is denied without prejudice to renewal at trial.

### iii.        Utica's Withholding of Information

Munich argues that "it is the function of this Court to determine whether Utica's failure to disclose certain information to [Munich] constituted a breach of the duty of utmost good faith or a breach of contract on the part of Utica." (Dkt. No. 344, at 18). It therefore requests "that the Court preclude Utica's experts from testifying . . . that Utica fulfilled its duty to disclose material facts to [Munich] because such testimony is tantamount to a conclusion of law." (*Id*. at 19). The

Court will, as previously noted, permit expert testimony regarding the ordinary practices in an industry if it helps the Court evaluate a party's conduct against the standards of accepted practice, and will limit expert opinion to that which will assist the Court.  Accordingly, Munich's motion is denied without prejudice to renewal at trial.

### iv.    Reinsurance Coverage for Declaratory Judgment Expenses

Munich argues that, because the issue of whether a reinsurance certificate covers declaratory judgment expenses is a question of law, and Utica's experts concede "that there is disagreement in the industry as to such coverage under certificates of facultative reinsurance," the Court should preclude Maneval and Feldsher from opining on the meaning of "expenses" in the Certificates. (Dkt. No. 344, at 19). Utica asserts that the evidence would assist the Court in resolving ambiguities in the Certificates.  (Dkt. No. 376, at 11-12). At this juncture, Munich's motion is denied without prejudice to renewal at trial.

### c.    Withdrawn Claims and Defenses

Munich asserts that the Court must preclude expert testimony concerning whether the limits of the Certificates caps its liability for indemnity and expenses and whether it "committed bad faith when it decided to seek reimbursement of $789,813.47 it paid" in expenses under the 1977 Certificate. (Dkt. No. 344, at 20). Utica opposes this motion and argues that evidence on these issues is relevant to Munich's credibility, its position on payment of declaratory judgment expenses, and its obligation to pay expenses. (Dkt. No. 377). For reasons discussed in Section III.A.3.e., *infra*, this motion is granted.

### d.    Speculative Testimony

Munich argues that all speculative testimony by Maneval and Feldsher must be precluded. (Dkt. No. 344, at 21–22). Munich asserts that Feldsher's and Maneval's expert reports

"are replete with words and/or phrases such as 'could,' 'would have expected,' 'would likely,' 'is likely,' or 'would have understood,'" thus demonstrating that their opinions "are nothing more than self-serving guesses." (*Id*. at 23). Munich seeks to preclude the testimony of Utica's experts to the extent it "mirrors the speculative statements in their reports." (*Id*.). Utica opposes this motion. (Dkt. No. 378). The Second Circuit has "held that a 'trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison.'" *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017) (quoting *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009)); *see e.g.*, *Stevens v. Metso Paper, USA, Inc.*, No. 07-cv-735, 2009 WL 10688031, at *3 (D. Conn. Sept. 25, 2009)[7] (finding expert's opinion that the plaintiff '*would have* successfully flipped a house once every three years" to be "far too speculative to be admitted, especially given the state of the real estate market over the past several years"). "By contrast, 'other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony.'" *Restivo*, 846 F.3d at 577 (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)). The Court will consider objections based on speculation at trial, when the evidence can be considered in context. Munich's motion is therefore denied without prejudice to renewal at trial.

### e.    Opinion Testimony as Substitute for Facts

Munich seeks an order prohibiting Utica from introducing testimony by Maneval and Feldsher in support of the proposition that Munich "would or could have lost documents, e.g., the Defense Endorsement," (Dkt. No. 344, at 34), on the ground that it is an improper "attempt to substitute opinions for evidence of a fact," (*id*. at 23). Utica opposes this motion. (Dkt. No. 379).

---

[7] No LEXIS citation available.

"[A]n expert's opinion is not a substitute for a plaintiff's obligation to provide evidence of facts that support the applicability of the expert's opinion to the case." *Virgin Atl. Airways Ltd. v. British Airways PLC*, 69 F. Supp. 2d 571, 579 (S.D.N.Y. 1999), *aff'd*, 257 F.3d 256 (2d Cir. 2001). The Court will consider such objections at trial, when the evidence can be considered in context. Munich's motion is therefore denied without prejudice to renewal at trial.

### 3.    General Evidentiary Issues (Dkt. No. 346)

#### a.    Evidence that Utica Analyzed Umbrellas Prior to 2003

Munich asserts that that there is no documentary evidence that Utica analyzed the "occurrence not covered by" language in its Umbrella policies before it "volunteered defense cost coverage to Goulds (February 28, 2003)" and that there are no witnesses with personal knowledge of this issue. (Dkt. No. 346, at 5). Therefore, Munich argues, any evidence on this issue must be precluded as "unsupported and self-serving." (*Id*.). Utica opposes Munich's motion and contends that Utica personnel involved in the Goulds policies and claims, including Bernard Turi, Kristen Martin, and John Griffin have personal knowledge of the Umbrella policy provisions and are competent to testify. (Dkt. No. 380). Munich's motion is premature and is denied without prejudice to renewal at trial.

#### b.    Evidence of Utica's Interpretation of "Not Covered By"

Munich argues that Utica should be precluded from presenting evidence on Utica's consistent interpretation of its defense obligations under the "occurrence not covered by" language in the Umbrellas. (Dkt. No. 346, at 6). Munich asserts that it served three requests for discovery "reflecting how Utica may have understood . . . its defense obligations under umbrella policies issued to Other Policyholders containing an identical or similar defense provision" and filed a motion to compel. (*Id.* at 7–8). United States Magistrate Judge Baxter denied Munich's motion finding that evidence concerning other insurers and policies only "marginally relevant."

(Dkt. No. 120, at 47). Munich asserts that Utica provided no discovery concerning the "not covered by" language when handling claims against other policyholders or with respect to Goulds. (Dkt. No. 346, at 8). Munich contends that, as a result, under Fed. R. Civ. P. 37(c)(1), Utica is not permitted to use any such evidence at trial. Utica opposes this motion. (Dkt. No. 381). Munich has not identified any evidence it anticipates Utica will introduce at trial on the issue of the interpretation of defense provisions in umbrella polices and whether Utica objected to discovery on that evidence.

Citing the "best evidence rule" as applied by New York state courts, Munich moves to preclude Utica from introducing testimony "concerning its alleged consistent interpretation of 'occurrence not covered by' because the best evidence that Utica was obligated to pay defense costs to Other Policyholders (under . . . similar policy language . . .) is the actual . . . documents reflecting the other umbrella policy terms, the payments made . . . and when and why the payments were made." (Dkt. No. 346, at 11). Utica opposes this motion. (Dkt. No. 381, at 10–11). The best evidence rule, set forth in Federal Rule of Evidence 1002, states: "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. Moreover, the best evidence rule does not necessarily preclude a witness from testifying about facts contained in documents. *See United States v. Finkielstain*, 718 F. Supp. 1187, 1192 (S.D.N.Y. 1989) ("As to the best evidence rule . . . [i]t does not require production of a document simply because the document contains facts that are also testified to by a witness."). In any event, Munich has not identified, with any specificity, the factual evidence or documents it contends are subject to this rule. Accordingly, Munich's motion is denied without prejudice to renewal at trial.

19

### c.     Primary Policies—Aggregate Limits

Munich argues that the Court should preclude Utica from offering evidence "that its primary policies always stated aggregate limits of liability" and that "the lack of aggregate limits in some Goulds policies is a unique event." (Dkt. No. 346, at 13–14). Munich argues that preclusion is warranted under: (1) Rule 37(c)(1), as Munich "was denied discovery on the topic"; (2) the "law of the case doctrine," citing Magistrate Judge Baxter's ruling that "[o]ther Policyholder information . . . is not sufficiently relevant to the issues in this litigation to warrant their production"; (3) the best evidence rule; and (4) the "prohibition against speculative testimony." (Dkt. No. 346, at 14–15). Further, according to Munich, there is a letter from the underlying Goulds coverage litigation that "identifies three other policies lacking aggregate limits that were issued to policyholders other than Goulds," (Dkt. No. 346, at 14 n.18; Dkt. No. 313-74, at R-0038586 to -00385878), and that "some, if not all," of the primary policies that Utica issued to Burnham Corporation from 1974 through 1985 "do not state aggregate limits." (Dkt. No. 346, at 14 n.18; Dkt. Nos. 313-137, 313-138, 313-139, 313-140).

Utica disputes that Munich was denied discovery on Utica's use of aggregate limits, and notes that it produced its underwriting manual in discovery and that Munich deposed several of Utica's employees on the issue of Utica's practice with respect to aggregate limits in products liability policies. (Dkt. No. 382, at 5–6).

As Munich has not identified with any specificity the evidence it seeks to preclude, the Court cannot conduct a meaningful analysis. Accordingly, Munich's motion is denied without prejudice to renewal at trial.

### d.    Evidence that Utica Intended Primary Policies to have Aggregate Limits

Munich contends that all evidence concerning aggregate limits should be precluded "because *whether* Utica's primary policies all were intended to have, or actually did have, aggregate limits is not in dispute in these litigations." (Dkt. No. 346, at 16). Instead, Munich explains, "[t]hese litigations concern what consideration Utica gave to Goulds, *i.e., how much* Utica paid, in exchange for Goulds' agreement in 2007 to impute aggregate limits into the Primary Policies that did not have them." (Dkt. No. 346, at 16). Indeed, Munich maintains that it does not dispute "whether Utica should have settled the aggregate limit issue." (Dkt. No. 346, at 19). Consequently, according to Munich, evidence that Utica intended its primary policies to have aggregate limits should be precluded. (Dkt. No. 346, at 16). Utica responds that, because Munich argues that the applicable standard, absent follow the fortunes, is coverage in fact and that its obligations depend on the 1978–82 policies, the issue of "whether the 1978–82 primary policies are subject to aggregate limits is relevant." (Dkt. No. 383, at 5). Utica asserts, that because the 1978–82 policies were subject to aggregate limits, "Munich's theory that Utica paid 'additional umbrella limits' to buy aggregates is wrong." (*Id*. at 7). In view of the parties' different views of the aggregate limits and their impact on the issues in this case, the Court will permit focused, probative evidence on aggregate limits. Accordingly, Munich's motion to preclude evidence of aggregate limits is denied.

### e.    Withdrawn Claims and Defenses

Munich argues that Rule 401 of the Federal Rules of Evidence requires the Court to preclude as irrelevant "any evidence . . . concerning the claims and defenses that are no longer at issue in these litigations," specifically, Munich's previous reliance on the *Bellefonte*[8] defense and

---

[8] *Bellefonte Reins. Co. v. Aetna Cas. & Sur. Co.*, 903 F.2d 910 (2d Cir. 1990).

Utica's withdrawn counterclaim of bad faith against Munich. (Dkt. No. 346, at 23–25). Utica

opposes Munich's motion and asserts, *inter alia*, that evidence on these prior claims and defenses

"goes to the credibility of its current accusations that Utica acted in bad faith." (Dkt. No. 384, at

4–5). There is no basis for admitting evidence concerning withdrawn claims and defenses;

Utica's conclusory assertion that such evidence is relevant to Munich's credibility does not meet

the relevance requirements of Fed. R. Evid. 401, which states that "evidence is relevant if: (a) it

has any tendency to make a fact more or less probable than it would be without the evidence; and

. . . the fact is of consequence in determining the action." Moreover, even if it were relevant the

Court would exclude it on the basis that any probative value is substantially outweighed by the

danger of "unfair prejudice, confusing the issues . . . undue delay, [or] wasting time." Fed. R.

Evid. 403. Accordingly, Munich's motion to exclude evidence of withdrawn claims and defenses

is granted.

### f.        Decisions from Other Litigations

Munich seeks an order precluding Utica from introducing as evidence "various rulings

and decisions rendered in connection with Goulds' coverage litigation against its other umbrella

and excess carriers." (Dkt. No. 346, at 28). In particular, Munich is concerned about the

admission of decisions from *Cannon Electric, Inc., v. Affiliated FM Insurance Co.*, No.

BC290354, which was filed in the California Superior Court, Los Angeles County, and *Utica*

*Mutual Insurance Co. v. Clearwater Insurance Co.*, No. 13-cv-1178, 2016 WL 254770, 2016

U.S. Dist. LEXIS 6219 (N.D.N.Y. Jan. 20, 2016). (Dkt. No. 346, at 28). Utica argues that

together those actions "gave rise to nine rulings." (Dkt. No. 385, at 4). According to Utica,

> in the *Cannon Electric* case, the courts ruled that the pro-rata
> method applied, ruled three separate times in Utica's favor on
> aggregate limits, and ruled that the Utica umbrella policies covered
> expense in addition to limits . . . . In the *Clearwater* case, the court
> ruled in Utica's favor on aggregate limits, on the not "covered by"

provision, and on the reasonableness of Utica's settlement with Goulds, and rejected a reinsurer's reliance on the settlement caps that Munich relies on.

(*Id*.). Utica asserts that these decisions are relevant to the reasonableness of its determinations and that their findings "that the primary policies were subject to aggregate limits rebut [Munich's] bad faith accusations." (*Id*. at 5).

"An out of court statement 'offered in evidence to prove the truth of the matter asserted' is inadmissable hearsay, except when otherwise provided by the Federal Rules of Evidence." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) (quoting Fed. R. Evid. 801(c), 802). "Judicial findings in other cases proffered as evidence are generally characterized as inadmissable hearsay." *Id*. (citing McCormick on Evidence § 318, at 894 (3d ed. 1984)). As Utica identifies no basis in the Federal Rules of Evidence for the admission of these decisions, Munich's motion to preclude is granted. The Court will consider these decisions as it would any other legal authority. *Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 461 (S.D.N.Y. 2004) (declining to admit reported decisions as evidence but noting that "the Court may take judicial notice of the reported decisions contained in those exhibits" (citing *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994))). Accordingly, Munich's motion to preclude decisions from other litigations is granted.

### g.     Deposition and Trial Testimony from Other Litigations

Munich moves to preclude the admission of the deposition and trial testimony of six individuals, taken in connection with the *Cannon Electric* cases, on the issue of whether "Goulds purchased primary policies from Utica that were intended to include aggregate limits." (Dkt. No. 346, at 34). Munich argues that this testimony is inadmissible hearsay and does not fall within Fed. R. Evid. 804(b)(1) (former testimony) or Fed. R. Civ. P. 32(a)(8) (deposition taken in an earlier action). The parties have agreed to confer and attempt to reach a stipulation concerning

this testimony. The Court will address this issue further in the event the parties are unable to stipulate. Accordingly, Munich's motion to preclude the admission of deposition and trial testimony from other litigations is denied without prejudice.

###### B.    Utica's Motions in Limine

###### 1.    Expense Obligations—Collateral Estoppel (Dkt. No. 352)

Utica contends that collateral estoppel bars Munich from arguing that the Certificates did not require Munich to pay expenses unless the Umbrella policies "require payment of those expenses" because it litigated that issue in *Employers Insurance Co. of Wasau v. American Re-Insurance Co.*, 256 F. Supp. 2d 923 (W.D. Wisc. 2003), and lost. (Dkt. No. 352-1, at 4). Relitigation of an issue of fact or law is precluded on the basis of collateral estoppel if "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010).

The dispute in *Employers* stemmed from a 1985 facultative reinsurance certificate that American Reinsurance Co., which is now Munich, issued to Employers Insurance Co. (the cedent) on an excess insurance policy issued to the Tribune Company. 256 F. Supp. 2d at 924. After being sued for environmental contamination, Tribune brought a declaratory judgment action against Employers seeking defense and indemnification. *Id*. Employers ultimately settled the claim but incurred legal expenses and costs defending against Tribune's declaratory judgment action. *Id*. American Reinsurance paid Employers a percentage of the settlement under the reinsurance certificate "but refused to pay any portion of the defense costs [including declaratory judgment expenses] on the basis that such payment was not required by the reinsurance certificate." *Id*.

24

Employers brought suit against American Reinsurance arguing, *inter alia*, that "the declaratory judgment defense costs are 'allocated loss expenses' within the meaning of paragraph 3 of the general conditions [in the reinsurance certificate]," and that American Reinsurance was responsible for those costs. 256 F. Supp. 2d at 924. The court found that there was "no question that the language of the general conditions [of the reinsurance certificate] requires [American Reinsurance] to pay [a percentage] of the declaratory judgment defense costs." *Id*. at 925. The court also rejected American Reinsurance's argument that it was not required to pay expenses unless they fell within the underlying excess policy, finding that only the "alleged liability" must fall within the underlying policy, not expenses. *Id*.

While the language of the reinsurance certificate quoted in *Employers* appears to be identical to the language in the 1977 Certificate, the doctrine of collateral estoppel does not bar litigation concerning the language in the Certificates in this case. "[T]he doctrine of collateral estoppel does not operate to bar relitigation of a pure question of law." *N.H. Ins. Co. v. Clearwater Ins. Co.*, 129 A.D.3d 99, 110 (1st Dep't 2015) (quoting *Sterling Nat'l Bank v. E. Shipping Worldwide, Inc.*, 35 A.D.3d 222, 223 (1st Dep't 2006)). Moreover, both "[t]he interpretation of an unambiguous contract" and the "determination of whether contractual language is ambiguous" are questions of law for the court. *Id*. at 111. Thus, collateral estoppel does not bar Munich from litigating in this case the interpretation of the language in the Certificates. Indeed, this action concerns certificates from different years "issued to a different cedent with respect to an underlying policy covering a different insured." *Id.* Accordingly, Utica's motion to preclude Munich from addressing the interpretation of the language of the Certificates at trial as barred by collateral estoppel is denied.

###### 2.    Not "Covered By" (Dkt. No. 353)

Utica moves to preclude as irrelevant all "evidence and arguments related to Munich's interpretation of the not 'covered by' provision in Utica's umbrella policies." (Dkt. No. 353-1, at 4). Citing New York's *contra proferentem* rule, "pursuant to which unresolvable ambiguities in insurance contracts are construed in favor of the insured," *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 615 (2d Cir. 2001), Utica argues that because the phrase "covered by" (i) is ambiguous, *see Utica I*, 2018 WL 1737623, at *24, and (ii) governs Utica's defense obligations, it must be construed in favor of coverage, and extrinsic evidence is unnecessary. (Dkt. No. 353-1, at 5–6).

"Under New York law, 'the insurer's duty to furnish a defense is broader than its obligation to indemnify.'" *Hugo Boss*, 252 F.3d at 620 (quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984)). As the Second Circuit has explained, "the New York cases establish that '[s]o long as the claims [asserted against the insured] may rationally be said to fall within policy coverage, *whatever may later prove to be the limits of the insurer's responsibility to pay*, there is no doubt that it is obligated to defend.'" *Id*. (alteration in original) (quoting *Seaboard Sur. Co.*, 64 N.Y.2d at 310). Indeed, "a separate, contractual duty to defend exists, and perdures until it is determined *with certainty* that the policy does not provide coverage." *Id*.

The phrase at issue, "occurrence not covered by" is contained within the "Defense-Settlement" provision of the Defense Endorsement to the 1973 Umbrella and the "Defense" provision of the 1977 Umbrella and concerns Utica's duty to defend and to pay defense expenses. (Dkt. No. 301-96, at 18; Dkt. No. 249-42, at 7). If the rule of *contra proferentem* applied, it would have required Utica, in view of the ambiguity, to defend. As Munich observes, this would conflict with the Court's indication in its previous decision that extrinsic evidence was required to ascertain the meaning of "occurrence not covered by." (Dkt. No. 367, at 5);

*Utica I*, 2018 WL 1737623, at *24. Indeed, Utica did not raise this argument at the summary

judgment stage. (Dkt. No. 367, at 7 n.7). Munich argues that *contra proferentem* should not

apply here because the evidence shows that neither Utica nor Goulds believed that "not covered

by" included exhaustion of underlying coverage. (Dkt. No. 367, at 5–10).[9] Because Utica raised

this argument for the first time in its motion in limine and has not cited case law supporting the

application of *contra proferentem* in the context of the facts alleged by Munich, the Court

declines to consider it prior to trial. The parties can, however, address in their post-trial briefing

whether *contra proferentem* applies under the facts of this case. Accordingly, Utica's motion to

preclude extrinsic evidence concerning "not covered by" is denied.

### 3.    Aggregate Limits (Dkt. No. 354)

Utica moves to preclude Munich from introducing any evidence or arguments on the

issue of whether the Primary Policies may have lacked aggregate limits; it argues that even if

"certain Primary Policies lacked aggregate limits, Utica would have been required to pay the

same amounts under the 1973 and 1977 umbrella policies that Munich reinsures." (Dkt. No. 354-

1, at 4). Munich opposes Utica's motion as "overbroad" and asserts that it misstates Munich's

position. (Dkt. No. 368, at 2). Munich states that it "does not contend that the primary policies

'may have' lacked aggregate limits," but rather that it "contends that they failed to state

aggregate limits and, because Goulds disputed the existence of aggregate limits in those primary

policies, the policies could not properly have been treated as having aggregate limits until

Goulds agreed in the Settlement Agreement to impute aggregate limits into those policies." (Dkt.

No. 368, at 2–3). For the reasons discussed in Section III.A.3.c., *supra*, Utica's motion to

preclude evidence on aggregate limits is denied.

---

[9]Munich asserts that Goulds and Utica were aware of the Defense Endorsement prior to the settlement agreement.

### 4.    Utica's Privilege Log and Hearing Transcript (Dkt. No. 355)

Utica seeks an order precluding the admission of "Utica's privilege log," (Dkt. No. 313-126), the transcript of Magistrate Judge Baxter's January 20, 2016, hearing (Dkt. No. 143), and any "other description of Utica's privileged material." (Dkt. No. 355). Munich asserts that it will "introduce the privilege log and transcript [as] evidence that Utica improperly considered reinsurance years before it settled its coverage dispute with Goulds, and again when it structured its settlement to allocate all of the Goulds settlement payments to the umbrella policies." (Dkt. No. 369). Munich asserts that the privilege log and transcript are "relevant" and thus admissible under Fed. R. Evid. 402 (general admissibility of relevant evidence), and, at the very least should be admissible for impeachment if Utica attempts to "prove that its allocation was 'reinsurance blind' or that it never received advice of counsel concerning insurance." (Dkt. No. 369 at 5). Utica asserts that any inferences that could be drawn from the privilege log would be improper and speculative, (Dkt. No. 355-1 at 4), and represented at the June 25, 2018, pretrial conference that it does not intend to present testimony that its allocation was "reinsurance blind."[10]

While the privilege log may constitute the admission of a party opponent, and thus would not be hearsay, Fed. R. Evid. 801(d)(2); s*ee Mut. Ins. Co. v. Murphy*, 630 F. Supp. 2d 158, 168 n.3 (D. Mass. 2009), *as amended* (July 2, 2009) (observing that privilege logs could "be deemed an admission of a party opponent"), Munich has not identified any relevant, nonspeculative inferences that could be drawn from it. *See Fireman's Fund Ins. Co.*, 238 F. Supp. 3d at 338 ("[A]ny inferences [the reinsurer] could draw from the privilege log, even if permissible, are merely speculative."). Accordingly, Utica's motion to preclude the admission of the privilege log

---

[10] In applying the follow-the-settlements doctrine to a cedent's allocation decisions, the Court of Appeals of New York concluded "that the cedent's motive should generally be unimportant" and that "[w]hen several reasonable allocations are possible . . . a cedent [may] choose the one most favorable to itself." *U.S. Fid. & Guar. Co. v. Am. Re-Ins. Co.*, 20 N.Y.3d 407, 421 (2013).

and transcript is granted. The Court will reserve ruling until trial on Munich's request to use any such evidence as impeachment.

### 5.    Cumulative Expert Testimony (Dkt. No. 356)

Citing Fed. R. Civ. P. 403, which allows the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of, *inter alia*, "needlessly presenting cumulative evidence," Utica seeks an order excluding "the duplicative opinions from Munich's six experts" concerning the interpretation of the "not covered by" provisions in the Umbrellas. (Dkt. No. 356-1, at 4). Munich opposes Utica's motion and asserts that "[t]he testimony it would offer will not be cumulative, and would only be given if such testimony would assist this Court in resolving factual issues." (Dkt. No. 370, at 2). Munich further states that it currently "expects to introduce at trial the live testimony of only three expert witnesses." (*Id*. at 3). In view of Munich's response and indication that it has no intent to introduce cumulative expert testimony, Utica's motion to preclude the testimony of Munich's experts is denied without prejudice to renewal at trial.

## IV.    CONCLUSION

For these reasons, it is

**ORDERED** that:

1.    Munich's motion in limine to preclude evidence of follow the fortunes and follow the settlements (No. 12-cv-196, Dkt. No. 332; No. 13-cv-743, Dkt. No. 271) is DENIED.

2.    Munich's motion in limine concerning Utica's experts (No. 12-cv-196, Dkt. No. 344; No. 13-cv-743, Dkt. No. 281) is GRANTED in part and DENIED in part as follows:

    a.    Munich's motion to preclude expert testimony concerning custom and practice as to:

        • Declaratory judgment expenses is DENIED,

- Notice of mid-term changes to reinsured policies is DENIED,
- Materiality of Defense Endorsement is DENIED,
- Utica's compliance with 1970s customs and practices is DENIED without prejudice to renewal at trial,
- The application of follow the settlements to cedent's allocation is DENIED without prejudice to renewal at trial,
- Utica's business practices and procedures is DENIED without prejudice to renewal at trial.

b.   Motion to preclude expert testimony on legal matters concerning:

- Reasonability of allocation and billing is DENIED,
- Reasonability of Utica's coverage determinations is DENIED without prejudice to renewal at trial,
- Utica's withholding of information is DENIED without prejudice to renewal at trial,
- Reinsurance coverage for declaratory judgment expenses is DENIED without prejudice to renewal at trial.

c.   Munich's motion to preclude evidence of withdrawn claims and expenses is GRANTED.

d.   Munich's motion to preclude speculative expert testimony is DENIED without prejudice to renewal at trial.

e.   Munich's motion to preclude opinion testimony as substitute for facts is DENIED without prejudice to renewal at trial.

3.   Munich's motion in limine concerning general evidentiary issues (No. 12-cv-196, Dkt. No. 346; No. 13-cv-743, Dkt. No. 282) is GRANTED in part and DENIED in part. Munich's motion to preclude:

- Evidence that Utica analyzed umbrellas prior to 2003 is DENIED without prejudice to renewal at trial,
- Evidence of Utica's interpretation of "not covered by" is DENIED without prejudice to renewal at trial,
- Evidence that the Primary Policies stated aggregate limits is DENIED without prejudice to renewal at trial,
- Evidence that Utica intended Primary Policies to have aggregate limits is DENIED,
- Evidence of withdrawn claims and defenses is GRANTED,
- Decisions from other litigations is GRANTED,

- Deposition and trial testimony from other litigations is DENIED without prejudice to renewal at trial.

4.    Utica's motion in limine to preclude evidence and arguments related to Munich's and Utica's expense obligations as barred by collateral estoppel (No. 12-cv-196, Dkt. No. 352; No. 13-cv-743, Dkt. No. 289) is DENIED.

5.    Utica's motion in limine to preclude evidence concerning the not "covered by" provision in the Umbrellas (No. 12-cv-196, Dkt. No. 353; No. 13-cv-743, Dkt. No. 290) is DENIED.

6.    Utica's motion in limine to preclude evidence of aggregate limits (No. 12-cv-196, Dkt. No. 354; No. 13-cv-743, Dkt. No. 291) is DENIED.

7.    Utica's motion in limine to preclude the admission of its privilege log and the transcript of Magistrate Judge Baxter's January 20, 2016, hearing (No. 12-cv-196, Dkt. No. 355; No. 13-cv-743, Dkt. No. 292) is GRANTED. The Court reserves ruling as to impeachment.

8.    Utica's motion in limine to preclude cumulative expert testimony (No. 12-cv-196, Dkt. No. 356; No. 13-cv-743, Dkt. No. 293) is DENIED without prejudice to renewal at trial.

**IT IS SO ORDERED.**

Date:    June 27, 2018
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

31