UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UTICA MUTUAL INSURANCE COMPANY,          :
                                         :
          Plaintiff,                     :
                                         :       No. 6:12-CV-00196 (BKS/ATB)
v.                                       :
                                         :
MUNICH REINSURANCE AMERICA, INC.,        :
                                         :
          Defendant.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MUNICH REINSURANCE AMERICA, INC.,        :
                                         :
          Plaintiff,                     :
                                         :       No. 6:13-CV-00743 (BKS/ATB)
v.                                       :
                                         :
UTICA MUTUAL INSURANCE COMPANY,          :
                                         :
          Defendant.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**UTICA'S POST-TRIAL REPLY BRIEF**

HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 955-1500

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000

*Attorneys for Utica Mutual Insurance Company*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Introduction ................................................................................................................1

II.   Munich Agreed To Pay Expense That Utica Incurred. ..............................................2

III.  Munich Must Pay Because Utica's Decisions Were Reasonable. ..............................6

      A.    Follow The Fortunes Governs. ........................................................................6

      B.    Follow The Fortunes Standards .......................................................................7

      C.    Utica's Payment Of Expense Was Reasonable. ...............................................8

      D.    The Court Should Reject Munich's Arguments About Aggregate Limits. ................13

      E.    The Court Should Reject Munich's Alternative Allocations. .......................14

            1.    Munich's Settlement Cap Allocation Is Irrelevant And Incorrect. ...................15

            2.    The Court Should Reject Munich's $140 Million Theories. ............................15

IV.   Even If Utica Must Establish Coverage In Fact, Munich Is Still Liable. ............................17

V.    The Court Should Reject Munich's Reliance On The Warranty Provision. ........................17

VI.   Munich Is Liable For DJ Expenses. .........................................................................19

VII.  Munich Failed To Show Its Entitlement To Reimbursement. ...........................................19

VIII. Conclusion ................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander & Alexander Servs., Inc. v. Underwriters at Lloyd's, London*,
  136 F.3d 82 (2d Cir. 1998)........................................................................3

*Ben Weitsman & Son of Scranton, LLC v. Hartford Fire Ins. Co.*,
  2018 WL 895576 (N.D.N.Y. 2018) ..........................................................12

*Branning v. CNA Ins. Cos.*,
  729 F. Supp. 728 (W.D. Wash. 1989)........................................................9

*Cont'l Cas. Co. v. Stronghold Ins. Co.*,
  77 F.3d 16 (2d Cir. 1996)...........................................................................6

*Covic v. Allstate Indem. Co.*,
  2017 WL 5054743 (N.D.N.Y. 2017) (Sannes, J.)....................................12

*Global Reins. Corp. v. Century Indem. Co.*,
  30 N.Y.3d 508 (N.Y. 2017) ...................................................................4, 5

*Global Reins. Corp. v. Century Indem. Co.*,
  890 F.3d 74 (2d Cir. 2018)........................................................................4

*John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co.*,
  717 F.2d 664 (2d Cir. 1983).....................................................................19

*Kaplan v. Old Mut. PLC*,
  526 F. App'x 70 (2d Cir. 2013) ...............................................................17

*Kenavan v. Empire Blue Cross & Blue Shield*,
  677 N.Y.S.2d 560 (N.Y. App. Div. 1998) ...............................................11

*Kim v. State Farm Fire and Casualty Ins.*,
  2018 WL 4847195 (2d Cir. Oct. 5, 2018)................................................12

*Matter of Midland Ins. Co.*,
  79 N.Y.2d 253 (N.Y. 1992) .......................................................................6

*Morgan Stanley Grp. v. New Eng. Ins. Co.*,
  225 F.3d 270 (2d Cir. 2000).......................................................................3

*N. Ctys. Eng'g v. State Farm Gen. Ins.*,
  224 Cal. App. 4th 902 (2014) ..................................................................12

*Nationwide Mut. Ins. Co. v. Erie and Niagara Ins. Ass'n,*
  672 N.Y.S.2d 596 (N.Y. App. Div. 1998) ...........................................................................12

*Newin Corp. v. Hartford Acc. & Indem. Co.,*
  62 N.Y.2d 916 (N.Y. 1984) .................................................................................................3

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,*
  86 N.Y.2d 685 (N.Y. 1995) ...............................................................................................18

*Rentways, Inc. v. O'Neill Milk & Cream Co.,*
  308 N.Y. 342 (N.Y. 1955) ...................................................................................................4

*Rosenbloom v. Adams, Scott & Conway,*
  521 F. Supp. 372 (S.D.N.Y. 1981) ....................................................................................18

*Show Car Speed Shop, Inc. v. U.S. Fid. & Guar. Co.,*
  596 N.Y.S.2d 608 (N.Y. App. Div. 1993) ...........................................................................9

*State Auto Prop. & Cas. Ins. v. Meyer,*
  2010 WL 2485952 (Minn. Ct. App. June 22, 2010) ............................................................9

*State v. Home Indem.,*
  66 N.Y.2d 669 (N.Y. 1985) ...............................................................................................11

*Travelers Cas. & Sur. Co. v. Gerling Glob. Reins. Corp. of Am.,*
  419 F.3d 181 (2d Cir. 2005)................................................................................................7

*U.S. Fid. & Guar. Co. v. Am. Re-Ins. Co.,*
  20 N.Y.3d 407 (N.Y. 2013) ("*USF&G*")................................................................... passim

*Unigard Sec. Ins. Co. v. N. River Ins. Co.,*
  79 N.Y.2d 576 (N.Y. 1992) ...........................................................................................6, 18

*Utica Mut. Ins. Co. v. Clearwater Ins. Co.,*
  2018 WL 4568306 (2d Cir. Sept. 25, 2018) ......................................................5, 6, 7, 12, 14

## I.       Introduction

The Court should rule for Utica for three main reasons. First, Munich contractually promised to pay expense that Utica incurred, without limiting that promise to expense that the reinsured policies covered.  At trial, Munich introduced no evidence that the parties agreed to any such limitation at the time of contracting. Ruling in Utica's favor on this basis would moot *all of Munich's other arguments*.

Second, follow the fortunes provides a separate reason to rule in Utica's favor. Munich's course of conduct and evidence about the custom and practice in the 1970s demonstrated that follow the fortunes governs Munich's obligations. Thus, Munich must pay unless it can show that Utica acted objectively unreasonably in deciding that the primary policies were subject to aggregate limits and that the umbrella policies covered expense. The evidence at trial established that the primary policies were subject to aggregate limits, as other courts have found.

With respect to expense, the Court's decision that the umbrella provisions are ambiguous requires a ruling in Utica's favor for four independent reasons: (1) Munich cannot show, as it must, that the policies unambiguously did not cover expense; (2) the ambiguity ruling means the Court already found Utica's interpretation objectively reasonable; (3) ambiguities are construed in favor of coverage; and (4) the ambiguity finding results in at least a potential for coverage, which triggers the duty to defend. Dkt. 431 at 14-16. The extrinsic evidence also shows that Utica and Goulds intended and understood that the umbrella policies would cover expense after exhaustion of the underlying policies. Munich's case wrongly focuses on amorphous phrases like "drop down" or "first dollar defense coverage" that were not used in Utica's policy, do not have a uniform meaning, and for which there is no evidence that they were known to Goulds.

Unable to seriously contest the reasonableness of Utica's decision, Munich emphasizes its two alternative allocations. However, even if those allocations are the most reasonable ones,

they do not show that Utica's actual allocation is unreasonable and they are therefore wholly irrelevant. Moreover, Munich cannot meet its burden to show how the alternative allocations would reduce its liability; rather, both allocations *increase* Munich's liability. And, the proposed allocations are inconsistent with binding law, which rejects Munich's positions that Utica must allocate based on the settlement and that Utica must allocate based on litigation risk. Additionally, Munich's allocation theories are inconsistent with the actual evidence.

Third, Utica's coverage determinations were in fact correct, which is a third independent basis to rule in favor of Utica. The Court's prior ruling and the evidence supports resolving the ambiguity about Utica's defense obligation in favor of Utica. And, Munich correctly concedes that, under the coverage-in-fact standard, the aggregate limits dispute is irrelevant.

The Court should also reject Munich's arguments about the endorsement to the 1973 umbrella policy, declaratory judgment expense, and reimbursement. Munich failed to satisfy its burden to show any breach of the certificate with respect to the endorsement or that any such breach was material or prejudicial. In fact, Munich disclaims such a responsibility at all, claiming that it is not alleging that the provision at issue was breached. Instead, Munich wrongly asserts that Utica cannot show a separate, new reinsurance agreement to reinsure the endorsement. Such a new agreement was not necessary because the certificate specifies what happens when the reinsured policy is changed, like it was by the endorsement. The evidence also showed that the certificates cover declaratory judgment expense and that Utica's allocation of that expense was reasonable and correct. In addition, Munich failed to meet its burden on its reimbursement claim and even if it did, Utica's established affirmative defenses bar that claim.

## II.    Munich Agreed To Pay Expense That Utica Incurred.

Munich agreed to pay "expenses incurred in the investigation, adjustment and litigation of claims or suits" and did not limit that agreement to expenses that the umbrella policies

covered. See Dkt. 431 at 3-7; Dkt. 442 at 2-4. Munich's reliance on testimony about reinsurance *generally* is wrong for three reasons. First, none of the witnesses testified about the actual certificates or Utica's or Munich's intent at the time the certificates were issued. Dkt. 447 ¶ 72 (Munich denying "that the conduct and opinions of MRAm's claims personnel is evidence of MRAm's intent at the time the Certificates were issued in the 1970s."). Second, Martin did not testify about the intent or practice in the 1970s and Feldsher and Maneval simply did not testify as Munich wishes they did. Dkt. 441 ¶ 134.[1] Third, because Munich seeks to imply a limitation into the certificate, it was required to show that such a limitation was a fixed and invariable custom and practice in the 1970s that Utica knew or should have known. Munich failed to do so.

Even ignoring that the evidence supports resolving the ambiguity in Utica's favor (Dkt. 431-1 ¶ 3), Munich cites no support for its theory that Utica had the burden of proof on the ambiguity. That theory is wrong for two reasons. First, the Court already found that the certificates "reasonably imply" the result for which Utica advocates. Dkt. 329 at 40. Thus, in the absence of evidence, that implication carries the day, regardless of whether it was strong enough to grant Utica summary judgment. Second, if evidence does not resolve an ambiguity, courts do not rule based on purported burdens. Instead, courts use contract interpretation rules, as Munich admits. *See Morgan Stanley Grp. v. New Eng. Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000) (when "extrinsic evidence does not yield a conclusive answer as to the parties' intent, a court may apply other rules of contract construction"); Dkt. 440 at 3 (citing *Morgan Stanley*).

---

[1] *See Newin Corp. v. Hartford Acc. & Indem. Co.*, 62 N.Y.2d 916, 919 (N.Y. 1984) (if policy is susceptible of two reasonable meanings, extrinsic evidence of intent *at the time of contracting* allowed); *Alexander & Alexander Servs., Inc. v. Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998) (extrinsic evidence allowed "to ascertain the meaning intended by the parties *during the formation of the contract*" (emphasis added)); Dkt. 391 at 10 (examining whether extrinsic evidence about DJ expense showed intent "at the time the Certificates were issued").

Those rules support Utica (Dkt. 431 at 3-7) and Munich fails to show otherwise:

- **Construing contracts as a whole**: Munich provides no response to this principle.

- **Plain meaning** and ***expressio unius***: Munich claims that the Court already addressed those principles. That is beside the point since, in the absence of evidence resolving the ambiguity, the court resorts to those principles again, which favored Utica then and now.

- **Avoiding superfluous terms**: Munich makes a conclusory assertion that the provisions "carefully define 'expense' so that the scope of that term is clear where defense expenses are covered by the umbrella policy." That does not address the issue or show how Munich's interpretation gives meaning to the specific clauses at issue, which exclude from and include in the definition expenses amounts that indisputably are not covered by the umbrellas. If expenses were limited to those covered by the umbrellas, then there is no reason to exclude or include amounts that are not covered by the umbrella policy.

- **Construing ambiguities against the drafter**: Munich says that this has "limited utility" when sophisticated parties are involved but the case it cites says nothing of the sort. In fact, the cited portion says that for sophisticated entities, "courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." *Global Reins. Corp. v. Century Indem. Co.*, 30 N.Y.3d 508, 518-19 (N.Y. 2017). Munich asks the Court to find that the certificates impliedly limit Munich's obligation to pay expense to that which Utica was legally obligated to pay, which is a clause the parties did not specifically include in paragraph 3. In any event, the Court of Appeals has construed ambiguities against the drafter in a dispute between sophisticated parties and found the rule "particularly appropriate" for a contract that "was embodied in a printed form prepared specifically by" one of the parties, like the contract here. *Rentways, Inc. v. O'Neill Milk & Cream Co.*, 308 N.Y. 342, 348 (N.Y. 1955).[2]

Moreover, Munich does not show how any contract interpretation rules support its position. Instead, it relies on generalized claims about how all reinsurance contracts supposedly always work. That ignores binding law that prohibits applying blanket generalizations to all contracts and requires courts to rule based on the actual contract terms. *See Global*, 30 N.Y.3d at 519 ("Rather than adopting a blanket rule, . . . the court must look to the language of the policy above all else."); *Global Reins. Corp. v. Century Indem. Co.*, 890 F.3d 74, 76-77 (2d Cir. 2018).[3]

---

[2] Munich states the expense formula "is geared to MRAm's [loss share], thus linking [¶] 3 of the Certificate to [¶] 1." Munich fails to explain how this supports its position and Utica has shown that the formula works whether the reinsured policies cover expense or not. Dkt. 371 at 38.

[3] Munich cites *Sumitomo* to support its proposition that "general axioms are of little utility when
(continued)

Thus, Munich's attempt to ignore the actual language and instead rely on general assertions like "reinsurance is the ceding of liability under a policy or policies" is inapt. The words Munich put in its contract control, not generalized statements about reinsurance. *Id.*

Munich's similarly sweeping statement that reinsurance "is deemed concurrent with the coverage of the underlying policy, unless expressly limited" is false in two ways. First, there is no rule that all reinsurance is concurrent. Indeed, as the Second Circuit ruled in *Clearwater*, concurrency arises out of follow-the-form provisions. *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 2018 WL 4568306, at *6 (2d Cir. Sept. 25, 2018) ("[f]ollow-the-form clauses achieve congruity of policies, and thus expense liability between the reinsurer and its reinsured"). Munich fails to show that its certificates contain such a provision and has stated otherwise: "The Certificate does not contain a follow form clause."[4] See Reply for ¶ 3. Any testimony that Munich relies upon to claim that a follow-the-form or concurrency clause or concept should be implied (a) did not address the intent or understanding in the 1970s and (b) did not establish a fixed and invariable practice in the 1970s about which Utica knew or should have known. Second, even if Munich contracted for concurrency here, there is no rule that a reinsurer can only "expressly limit" its obligations to something less than concurrency and cannot expand its obligations to something more than concurrency. To the contrary and as the Second Circuit confirmed in *Clearwater*, concurrency exists except "where the [reinsurer's] certificates' terms and conditions are

---

the interpretation of the contract can be determined under specific principles applicable in the particular setting, *i.e.*, reinsurance." In *Sumitomo*, the court simply stated that it began its "analysis with certain fundamental propositions in the law of reinsurance." 75 N.Y.2d 295, 301 (N.Y. 1990).  The court did not reject fundamental contract interpretation principles in favor of some unique contract rule purportedly applicable to all reinsurance contracts. In its 2017 decision in *Global*, the court stated unequivocally: "Reinsurance contracts are governed by the same principles that govern contracts generally." 30 N.Y.3d at 518.

[4] Munich wrongly relies on *Hartford v. California*, which had nothing to do with concurrency.

inconsistent with the underlying policy's" terms and conditions. 2018 WL 4568306, at *5; *see also* Dkt. 371 at 36 (collecting cases). Munich certificates contain specific language in ¶ 3 that obligates Munich to pay expense regardless of the terms of the reinsured policies.[5]

Finally, Munich argues that the Court should stick with its collateral estoppel decision that erroneously used New York law, but provides no reason for the Court to do so and no legal authority that New York law governs the collateral estoppel effect of a federal court judgment.

## III.    Munich Must Pay Because Utica's Decisions Were Reasonable.

### A.    Follow The Fortunes Governs.

Munich concedes that its corporate practice is to act as if follow the fortunes governs its obligations but argues that is irrelevant. Munich is wrong. Course of conduct is relevant evidence. Dkt. 431 at 10 n.6. Moreover, that evidence shows that Munich knew of and followed the custom and practice regarding follow the fortunes. And the expert testimony established that custom was fixed and invariable in the 1970s.[6] Thus, follow the fortunes applies.[7]

---

[5] Utica has previously addressed Munich's attempt to alter its obligations with arguments that "reinsurance contracts are contracts of indemnity" and about *ex gratia* payments. See Dkt. 442 at 2-3; Dkt. 371 at 35-36 & 388-39. In addition, even the very cases Munich cites to support the former argument show that actual contract terms govern, not generalized propositions. *See Matter of Midland Ins. Co.*, 79 N.Y.2d 253, 258 (N.Y. 1992) (referencing reinsurance contract's insolvency clauses, which require reinsurers to pay even though there were no payments by the reinsured company to indemnify given that the reinsured company was insolvent and never made payment); *Cont'l Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16, 19 (2d Cir. 1996) (recognizing that an "express contract for indemnity, however, remains a contract" and that parties may agree to other contractual provisions modifying the obligation to indemnify).

[6] Munich asserts that Schmidt's opinion does not support applying a reasonableness standard even if follow the fortunes does not apply because the Court already rejected that argument. That is false and Munich's citation does not support it. Dkt. 391 at 3. Munich's rhetorical questions (Dkt. 440 at 6 n.10) are easily answered. No legal decision has addressed this issue because the party opposing the applicability of follow the fortunes has never introduced expert testimony that reasonableness is the standard even if follow the fortunes does not apply, like Munich did. And, Utica retained experts to testify that the follow the fortunes reasonableness standard governed because it did not know that Munich would retain an expert to testify to the exact same thing.

B.     **Follow The Fortunes Standards**

Munich makes several unsupported and incorrect assertions about follow the fortunes. First, Munich claims that a cedent must be "reinsurance blind." That is false, as Munich's counsel has admitted. *See U.S. Fid. & Guar. Co. v. Am. Re-Ins. Co.*, 20 N.Y.3d 407, 421 (N.Y. 2013) ("*USF&G*") (cedents can choose the allocation most favorable to themselves and need not ignore own interests); Dkt. 442-1 at 4 (this argument was "effectively gutted by *USF&G*").

Second, Munich asserts that Utica has to meet unidentified prerequisites for follow the fortunes to apply and that Utica has the burden to show coverage. Munich cited nothing supporting that and the actual case law establishes the opposite. Dkt. 431 at 14.

Third, Munich suggests that cedents may not "select an approach which results in the largest reinsurance recovery." That too is wrong. Under binding law, cedents can choose the allocation most favorable to themselves, including one that increases reinsurance recoveries. *USF&G*, 20 N.Y.3d at 421; *see also Travelers Cas. & Sur. Co. v. Gerling Glob. Reins. Corp. of Am.*, 419 F.3d 181, 193 (2d Cir. 2005) (cedent need not minimize reinsurance recovery).

Fourth, Munich claims that "objective reasonableness" is actually not the standard and urges the Court to instead focus on "how and why Utica came to its decision." This argument is directly at odds with binding authority that the test is objective, not subjective.[8] *USF&G*, 20

---

[7] The Second Circuit's *Clearwater* decision was consistent with this Court's ruling that follow the fortunes is not implied as a matter of law and did not address whether it could be implied as a matter of fact. 2018 WL 4568306, at *10.

[8] Munich asserts that Utica did not act in a "businesslike" manner. Yet the standard is objective reasonableness. *USF&G*, 20 N.Y.3d at 420. The Court of Appeals and the Second Circuit have not imposed a separate amorphous and undefined "businesslike manner" standard. Indeed, something that is businesslike to one company may not be to another. For example, to Utica, it is businesslike to pay claims that Utica believes are covered based on its reading and long-standing understanding of the coverage while, to Munich, the only businesslike approach is to search high and low for every reason to deny coverage, no matter how specious. See Dkt. 431 at 24 n.13

(continued)

7

N.Y.3d at 420; Tr. at 1148:15-16 (The Court: "the test is whether it was objectively reasonable"); Dkt. 396 at 41:14-15 (the Court recognizing that the cedent's motive is generally unimportant). Regardless, under either standard, Utica's actions were appropriate, as shown previously and below. Dkt. 431 at 14-27; Dkt. 442 at 6-22; *infra* § III.C & E.

### C.    Utica's Payment Of Expense Was Reasonable.

Utica's expense payments were reasonable, as the Court's ambiguity finding and the evidence establish. Munich argues that the Court's ruling is not relevant because it did not find that Utica's interpretation was in fact correct. That is not Utica's argument. Rather, the Court's actual finding that the provision is ambiguous requires a ruling in Utica's favor for four reasons, none of which assume that the Court found that Utica's view was correct. Dkt. 431 at 14-16.

The evidence also showed that Munich cannot establish that Utica's interpretation was unreasonable: (1) testimony from a Utica underwriter (Griffin), (2) testimony from the Goulds employee involved in purchasing insurance (Bradshaw), (3) testimony from the Utica employees involved in handling the Goulds claims (Turi, Martin, Creedon), (4) a Munich employee's interpretation,[9] (5) the only contemporaneous industry literature identified by either party (The Umbrella Book), (6) the contemporaneous documents, and (7) expert testimony.[10]

Munich wrongly claims that the Court should rule against Utica because Utica purportedly ignored the *USF&G* standard. The Court's ambiguity ruling and the evidence show

---

(explaining that Munich took that approach in this case with devastating consequences). In any event, if the Court imposes a separate "businesslike" standard, it would be creating new law.

[9] Munich's statement that the testimony is "after-the-fact" is meaningless. All testimony is after the fact since there is no reason to testify before a dispute. Munich's assertions about its own employee's interpretation are wrong. See Reply for ¶ 102.

[10] Munich accuses Utica of not relying on policy language or case law. However, the Court already determined that the policy language was ambiguous and Utica has addressed the policy language and the case law. Dkt. 359 at 30-32, 36-41. Thus, Utica appropriately focused on how the extrinsic evidence supported resolving the ambiguity in favor of coverage.

that Utica's payment of expense was "objectively reasonable." They also show that paying expense under the umbrellas is something that Utica and Goulds could have arrived at in the absence of reinsurance. Goulds always claimed that the umbrella policies with the not-covered-by provisions covered expense, which had nothing to do with reinsurance, and Utica's decision to pay expense had nothing to do with reinsurance. Dkt. 441 ¶ 57; Dkt. 431-1 ¶¶ 85-90, 99.

Munich also contends that Griffin, Bradshaw, Turi, Martin, and Creedon's testimony is discredited by Utica's and Goulds's outside counsel. That is false. Dkt. 441 ¶¶ 54-61.[11] And, Munich does not explain how outside counsel could discredit their clients' own understanding and intent. Outside counsel's alleged views are not relevant to interpreting a contract since they do not show either contracting parties' intent. Moreover, Munich does not support its position that Utica could successfully deny coverage to Goulds by relying on outside counsel's views.

Munich's argument that Bradshaw did not testify about the not-covered-by provision is misplaced. Relevant and persuasive evidence about intent includes what the policyholder intended the policy to cover and is not limited to testimony about the specific provisions at issue.[12] Indeed, in the California case, the Court relied on Bradshaw's testimony in finding aggregate limits even though he did not testify about the actual provisions. Dkt. 302-4 at 6.

---

[11] For example, Munich contends that "both sets of Utica's coverage attorneys spotted the issue immediately and questioned Utica as to why it was defending under the 'occurrence not covered by' language" and that Utica "should one firm down." Not so. Robinson never testified he spotted any such issue and merely testified that the issue was not among the ones Utica asked him to research. Dkt. 441 ¶ 55. Savino never testified that he questioned Utica about why it was defending as opposed to simply raising it as a potential issue. *Id.* ¶ 56.

[12] *See Show Car Speed Shop, Inc. v. U.S. Fid. & Guar. Co.*, 596 N.Y.S.2d 608, 609-10 (N.Y. App. Div. 1993) (considering evidence about policyholder's "primary purpose" in obtaining insurance and policyholder's belief of what it had purchased); *State Auto Prop. & Cas. Ins. v. Meyer*, 2010 WL 2485952, at *4 (Minn. Ct. App. June 22, 2010) (considering testimony from policyholder about intent in purchasing policy); *Branning v. CNA Ins. Cos.*, 729 F. Supp. 728, 733 (W.D. Wash. 1989) (considering testimony about lack of intent to purchase coverage).

9

Unable to deal with the contracting parties' understanding and belief, Munich contends that the interpretation finds "no industry support." Yet, the only documentary evidence of the industry's view in the 1970s was The Umbrella Book, which supports Utica in multiple ways.[13] Dkt. 431-1 ¶¶ 104-115.  The credible expert testimony also supported Utica. *Id.* ¶¶ 116-123.

The only actual evidence Munich cites are documents that are not a part of the policies that use the amorphous phrase "first dollar defense." Utica had previously shown why Munich's focus on first dollar defense does not help its case. Dkt. 431 at 20-21; Dkt. 442 at 10. Munich's newest claim that Turi and Maneval agreed with Munich's view of first dollar defense is contrary to their actual testimony. (Dkt. 431 ¶¶ 128, 129). Munich also asserts that the Court has already found that "first dollar defense cannot be provided by an umbrella where the primary policy has previously defended the *claim*." (emphasis added). Yet, as Munich stated, the Court did not and could not make factual findings in its summary judgment decision.[14] Dkt. 440 at 9.

Moreover, Munich has still yet to address two fatal flaws in its argument: (1) that the

---

[13] Munich wrongly claims that Utica's reliance on The Umbrella Book is belied by (1) a provision in some of the policy forms; (2) Robertson's discussions with underwriters and (3) cases in which other insurers have not defended under purportedly similar language. Munich's first point does not deal with the Liberty policy, which does not contain that provision (P-559), and in any case is meritless (*id.* ¶ 114). Munich's second point is not actually supported by Robertson's testimony, and any such testimony is inconsistent with his written words in the 1970s. With respect to Munich's third point, other insurer's legal positions taken years after Utica issued these policies do not reflect the customs in the 1970s and are not relevant to Utica's and Goulds's intent. Munich has yet to show otherwise or show how Utica could successfully deny coverage to Goulds by relying on other insurer's positions. Utica has shown that Munich's cases do not apply (Dkt. 359 at 36-41), as an article cited by Munich confirms (Dkt 442 at 12 n.16), and that other insurers have taken the same position as Utica or had their forms interpreted like Utica interprets its own form, even if that were relevant (Dkt. 441 ¶ 52).

[14] In any event, Utica agrees with Munich's characterization as it relates to a single claim; however, there are tens of thousands of asbestos *claims* at issue, not a single *claim*. Dkt. 447 ¶ 135. Thus, for each individual asbestos claim for which the umbrella policy provided a defense, the umbrella policy did provide first dollar defense because the primary policy did not defend that claim given that the primary policy was exhausted.

documents it relies upon do not state that *only* first dollar defense coverage would be provided and no other defense coverage and (2) that Utica could not use an internal document not shared with Goulds to deny coverage, as Robertson confirmed. Dkt. 431-1 ¶ 133.[15]

Munich argues that there was no evidence "that anyone actually focused upon the 'occurrence not covered by' language when Utica" wrote to Goulds in February 2003.[16] But, objective reasonableness is the test, not whether a cedent focused on a particular provision that a reinsurer focused on years later. In any event, Turi testified that he would have reviewed the policy language by the time of the 2003 letter. Tr. at 1185:11-22. The evidence also showed that Utica's claims handlers knew that Utica's long-standing approach was to pay defense costs under umbrella policies with the not-covered-by provision. Dkt. 431-1 ¶¶ 85, 87, 90; Dkt. 441 ¶ 51. Munich's argument that this evidence is "unsupportable and unverifiable" ignores the testimony that established that very fact. There is no rule that testimony must be supported by a document and Munich did not even challenge the testimony on this point. For instance, in response to Munich's questioning, Turi identified a specific, prior instance in which Utica defended under the umbrella policies after primary exhaustion and Munich elected to not explore that testimony.[17] Tr. at 1522:6-1523:6. And, Utica's claims handlers' testimony shows Utica's course

---

[15] *See State v. Home Indem.*, 66 N.Y.2d 669, 671-72 (N.Y. 1985) (rejecting insurer's affidavit because it "contained nothing to establish that the limitation claimed to result from that term of art had been brought to the attention" of the policyholder); *Kenavan v. Empire Blue Cross & Blue Shield*, 677 N.Y.S.2d 560, 563 (N.Y. App. Div. 1998) (insurer could not rely on documents since at most they showed a "subjective intent that was not made known to the policyholders").

[16] Munich's argument about what Utica did before the February 2003 letter only applies to the 1977 umbrella policy. Martin testified that when she located the 1973 endorsement in December 2007, she read it and determined that it meant the 1973 umbrella policy would cover expense in addition to limits. Tr. at 517:21-519:13 & 568:4-5.

[17] Munich wrongly asserts that no witnesses other than Turi "were consulted as to their understanding at the time the decision in Goulds was made." Munich ignores Griffin, Martin, and Creedon's testimony.

11

of conduct, which is relevant evidence (see cases cited at Dkt. 359 at 26 & Dkt. 371 at 30 n.36), and could be used to establish Utica's obligation to defend. *N. Ctys. Eng'g  v. State Farm Gen. Ins.*, 224 Cal. App. 4th 902, 924 (2014) (holding that insurers' claims personnel's admissions that there was a "potential for coverage" was relevant to establish that insurer must defend).[18]

Munich also provides no support for its proposed rule that the only relevant evidence or case law is that which Utica actually considered or existed at the time it made the relevant decisions. There is no such rule, as shown in the Court of Appeals's most recent decision on this issue in which that court considered developments after the relevant decision was made. Dkt. 385 at 14-17 (collecting cases). Decisions resolving coverage disputes, including from this Court, are regularly based on facts or case law that were unknown to the parties at the time the relevant coverage request or decision was made. *Id.*[19] Indeed, Munich does not even follow its own rule; it relies heavily on things that Utica did not consider like Mr. Robertson's unbelievable testimony and Munich's mischaracterizations of documents about first dollar defense. In any event, if Munich's rule were correct, then, under Munich's view, the only evidence the Court

---

[18] The same is true for the testimony of Utica's underwriters. *Nationwide Mut. Ins. Co. v. Erie and Niagara Ins. Ass'n*, 672 N.Y.S.2d 596, 598 (N.Y. App. Div. 1998) ("In reaching our conclusion, we are mindful of the [] testimony of defendant's underwriting manager, who admitted that the accident was a covered occurrence according to the" policy).

[19] *See, e.g., Covic v. Allstate Indem. Co.*, 2017 WL 5054743, at *1 (N.D.N.Y. 2017) (Sannes, J.) (relying on case law to support insurer's interpretation of the word "reside" without any indication that insurer knew about those cases when it denied coverage, including a 2016 decision issued after the denial of coverage in 2014); *id.*, Dkt. Nos. 7-3 through 7-6 (insurer's letter denying coverage without any reliance on case law); *Clearwater*, 2018 WL 4568306, at *5 (relying on 2017 decision to find that reinsurer's pre-2017 denial of coverage was wrong); *Kim v. State Farm Fire and Casualty Ins.*, 2018 WL 4847195, at *2 (2d Cir. Oct. 5, 2018) (affirming coverage denial based on dictionary definition of word without any evidence that insurer actually relied on that dictionary definition when it denied coverage); *Ben Weitsman & Son of Scranton, LLC v. Hartford Fire Ins. Co.*, 2018 WL 895576, at *16 & *18 n.9 (N.D.N.Y. 2018) (affirming coverage denial based on dictionary definitions of word in policy and 2017 legal decision without any evidence that insurer actually relied on them when it denied coverage in 2012).

could consider was Utica's reading of the plain language of the policies, Utica's practice of covering defense costs under umbrella policies with the not-covered-by provision, and Utica's well-established understanding that that is how Utica's umbrella policies worked. That evidence supports Utica. Dkt. 381 at 9 (cases that contracting party's interpretation is relevant).

Finally, Munich's request that the Court find that Utica acted unreasonably in defending its policyholder is without precedent. Insurers are repeatedly accused of acting unreasonably or in bad faith for *not* defending their policyholders; Munich cites no court that ever found an insurer unreasonable or in bad faith for actually defending its policyholder.

### D.      The Court Should Reject Munich's Arguments About Aggregate Limits.

To meet its burden under Second Circuit case law to show that its proposed allocations would reduce its liability, Munich must show why its aggregate limits arguments matter in light of the undisputedly correct pro rata and vertical exhaustion methods. Munich simply references its theory that Utica must move $140 million from the umbrellas because it allegedly paid that amount to resolve the aggregate limit issue in the 1978-1982 primaries. But, if Utica had to do that, the money would appropriately come from the 1978-1982 umbrella policies and not other umbrella policies given the pro rata and vertical exhaustion methods.[20]

And, even if the amounts allocated to the 1978-82 primary policies mattered to Munich's liability, Munich still fails to even try to show that the policies were not subject to aggregate limits. All evidence and multiple court rulings based on that evidence support that the policies

---

[20] Munich claims that if there were no aggregates, "it is unlikely that [] the losses or expenses would ever reach the umbrella[s]." While true for the 1978-82 umbrellas, that is not true for the 1973 and 1977 umbrellas. It would only be true under the all sums or horizontal exhaustion methods but they do not apply. Dkt. 431 at 24 (pro rata and vertical exhaustion apply).

were subject to aggregate limits. Dkt. 431-1 ¶¶ 150-162, 168-169, 171-172; Dkt. 359 at 56-57.[21]

Munich's failure to address this issue is important because courts repeatedly find that allocations based on policy terms are reasonable. Dkt. 431 at 29. Thus, because the policies were subject to aggregate limits, Utica's allocation on that basis was objectively reasonable and it was likewise objectively reasonable to not allocate parts of the post-settlement payments to those policies since they had exhausted years before the settlement.

This evidence is also important relative to whether Utica's allocation is one that the parties could have reached in the absence of reinsurance. *USF&G*, 20 N.Y.3d at 425-26. Because the evidence shows the policies were subject to aggregate limits, the parties could have reached such an allocation without anything to do with reinsurance. *Id.* at 426-28 (finding the part of the cedent's allocation based on the policy terms reasonable as a matter of law). Indeed, even putting aside the overwhelming evidence of aggregate limits, Goulds had reasons to agree to aggregate limits that had nothing to do with reinsurance like accessing its excess insurance. Dkt. 431-1 ¶ 198. In addition, the California court decisions requiring Goulds and its excess insurers to allocate based on aggregate limits in the primary policies had nothing to do with reinsurance.[22]

### E.     The Court Should Reject Munich's Alternative Allocations.

Because Utica's allocation based on the policies is reasonable, Munich's alternative allocations, even if they are more reasonable, are irrelevant. Dkt. 431 at 29. Munich still has not provided authority to the contrary and the Court need not consider the alternate allocations on that basis alone. Ignoring that, Munich also failed to meet its burden under Second Circuit law

---

[21] One of the rulings was Judge Sharpe's *Clearwater* decision, which was reversed on grounds other than the rulings on aggregates and umbrella coverage for expense. 2018 WL 4568306.
[22] Munich claims that Utica's allocation is not one that Goulds could have agreed to "because Utica never consulted Goulds before deciding to allocate . . . ." That misses the point because the test is whether the allocation is one the parties *could have* agreed to.

that its proposed allocations would reduce its liability. In fact, each allocation would increase Munich's liability. Dkt. 431 at 28-29; Dkt. 442 at 13, 19-20; Dkt. 431-2 (demonstrative). Even if the Court considers Munich's allocations despite those two fatal flaws, it should reject them.

### 1.    Munich's Settlement Cap Allocation Is Irrelevant And Incorrect.

Munich has no response for Utica's showing that the Court of Appeals has already rejected its argument that a cedent's allocation must match its settlement. Dkt. 431 at 32. Instead, Munich claims for the first time that *USF&G* supports Munich because the "failure to allocate any value to Utica's ability to trade out of an unlimited liability is functionally indistinguishable from USF&G's failure to allocate any value to the bad faith component of its settlement." That is false. Unlike *USF&G*, Munich does not claim that Utica should have allocated some amount to bad faith claims. Instead, Munich challenges Utica's allocation among particular policies because, according to Munich, it does not match the allocation to policies in the settlement. And it is on that exact issue that the Court of Appeals squarely rejected Munich's argument, as Munich's counsel has acknowledged. Dkt. 442-1 at 14 (Munich's counsel: "an allocation consistent with the settlement . . . is not the only reasonable allocation that can be sustained").

Munich also incorrectly claims that supplemental expense coverage was waived in the settlement. The settlement served as a cap on Utica's previously unlimited supplemental expense obligation, which benefited Utica and its reinsurers. Dkt. 431-1 ¶¶ 182-185, 191. In addition, supplemental expense coverage was not waived since it accounts for the settlement cap being $325 million when the actual umbrella policy limits were $255 million. *Id.*

Finally, as shown in Utica's opposition, the Court should reject Munich's contention that the settlement "discredited and changed" Utica's coverage obligations. See Dkt. 442 at 16-18.

### 2.    The Court Should Reject Munich's $140 Million Theories.

Binding case law prohibits requiring cedents to allocate based on litigation risk. Dkt. 431

at 29-32 (discussing cases). Munich's new focus on Utica allegedly giving consideration in exchange for resolving Goulds's aggregate limits arguments is just a repackaged version of its argument that Utica must allocate based on litigation risk. In every settlement, cedents and policyholders must give each other consideration to extinguish the litigation risk posed by each side's arguments. Yet, cedents are not required to allocate based on litigation risk.

For example, in *Gerling*, the cedent paid hundreds of millions of dollars in settlement, which included consideration for resolving the policyholder's main argument that would have led to exposure largely, if not entirely, under the cedent's primary policies. The Second Circuit upheld the cedent's allocation to its excess policies even though the allocation did not match the consideration paid to resolve the potential exposure under the primary policies. Instead, the court found the cedent's allocation based on its interpretation of the policies reasonable as a matter of law regardless of whether allocating based on consideration paid would have been another reasonable way to allocate. *See also USF&G*, 20 N.Y.3d at 426-28 (where cedent gave consideration in settlement to avoid exposure under thirteen policies, court found that cedent's allocation to one of those policies and not the other twelve was reasonable as a matter of law).

Munich argues that Utica's alleged payment to resolve the risk to the primary policies was "a totally different kind of risk than the one being considered in the *Gerling* or *North River* cases (relied on by Utica), where the settlement determined which of various potentially triggered policies would have to pay." Yet, that is exactly what happened here. Utica argued the umbrellas had to pay; Goulds argued the primaries had to pay. The settlement resolved that issue. Thus, even under Munich's rubric, the Court is bound to follow *Gerling* and *N. River*.[23]

---

[23] Relatedly, Munich is wrong that *Gerling* and *North River* "actually support MRAm, because here, Utica actually paid an additional sum of money based on an exposure that never even
(continued)

IV.     **Even If Utica Must Establish Coverage In Fact, Munich Is Still Liable.**

As set forth previously, if Utica must establish coverage in fact, the umbrella policy language covered expense for several reasons. Dkt. 431 at 38-39. Munich now concedes that it "has never contended that the Reinsured Umbrella Policies do not cover supplemental expenses because Utica's 1978-82 primaries lacked aggregates." Thus, under the coverage-in-fact standard, the Court need not decide whether the 1978-82 primaries were subject to aggregates.[24]

V.      **The Court Should Reject Munich's Reliance On The Warranty Provision.**

As shown before, Munich cannot establish a breach of the warranty provision. Dkt. 431 at 40-44; Dkt. 442 at 23-25. Recognizing its inability to do so, Munich has now changed course and asserts that the parties did not create a new reinsurance contract to cover the endorsement. *Id.* But a new contract was not necessary because the actual reinsurance contract identifies what happens when there is a change to the reinsured policy. It requires Utica to "notify [Munich] promptly of any changes made" to the reinsured policy. Because the contract accounts for this exact situation, the Court must reject Munich's argument that a new contract must be made.  *See Kaplan v. Old Mut. PLC*, 526 F. App'x 70, 72 (2d Cir. 2013) (requiring evaluation of whether a modification was made in accordance with the modification provision in the original contract).

Munich claims for the first time that the provision "was an assertion relating to a future undertaking – a condition upon which future performance was premised." The Court should reject this argument because it was raised for the first time in an opposition to a post-trial brief.

theoretically presented a risk of loss to Utica's Umbrellas." That completely ignores that, if the primary policies were subject to aggregate limits, as Utica was arguing and as multiple courts eventually found, then Utica's umbrella policies *were exposed*.

[24] As Utica showed in its initial brief, Munich's arguments about the settlement cap allocation and allocating $140 million more to the primaries are based on the follow-the-fortunes doctrine applying and therefore are not relevant if the coverage-in-fact standard applies. Dkt. 431 at 38 n.20. Munich concedes this point by not responding to it in its opposition.

*See Rosenbloom v. Adams, Scott & Conway*, 521 F. Supp. 372, 386 (S.D.N.Y. 1981) (rejecting argument raised for the first time in post-trial briefing). In addition, Munich is wrong. A condition precedent is a provision that "describe acts or events which must occur before a party is obliged to perform a promise made pursuant to an existing contract." *See Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,* 86 N.Y.2d 685, 690 (N.Y. 1995) (involving condition precedent that stated that if condition was not satisfied "both the agreement and the sublease were to be deemed 'null and void and of no further force and effect'").[25] To be a condition precedent, the provision must contain "clear language showing that the parties intended to make it" such a provision, like, for example, stating that notice "is a condition precedent to any liability under this policy." *Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 79 N.Y.2d 576, 581-82 (N.Y. 1992). Munich's certificate does not do so and Munich does not even attempt to explain why the provision is a condition precedent. Moreover, because Munich "is <u>not</u> alleging breach" of the provision, this whole argument is irrelevant.

Munich also continues to argue that it has the right to approve changes to the reinsured policy but provides no support for that other Lippincott's discredited testimony. That testimony does not establish a fixed and invariable practice necessary to imply a term requiring acceptance.

Finally, Munich's assertions about waiver miss the point. First, Munich claims it did not receive any benefit when Utica withdrew its $1.6 million billing in December 2007. That is false and irrelevant. The time value of money necessary means Munich benefited from the withdrawn billing even if Munich was billed for that same amount at a later time. Regardless, it is irrelevant because waiver does not require that the party that waived the relevant defense receive a

---

[25] *Oppenheimer* does not support Munich because it involved the application of a condition precedent and the provision in Munich's certificates is not a condition precedent. Munich's other cases about conditions precedent do not apply for the same reason.

monetary benefit in doing so. Second, Munich argues that it could not have known to object at the time the billing was withdrawn because Utica told Munich that the endorsement covered expense in addition to limits. But Munich's argument is simply that Utica did not notify Munich of the endorsement regardless of the coverage it provides. In December 2007, Munich had the same information that on which it later based its claim that it was not bound by the endorsement: Munich knew about the existence of the endorsement, knew Utica's position was that it covered expense in addition to limits, and knew Munich did not possess the endorsement in its files as they existed in the 2000s. Dkt. 431-1 ¶¶ 57-60. Yet, at that time, Munich made no such claim, presumably since it would have led to a bill of $1.6 million as opposed to $0.

## VI.     Munich Is Liable For DJ Expenses.

Utica has shown that Munich is liable for DJ expenses. Dkt. 431 at 44-46; Dkt. 442 at 26-27. The Court should reject Munich's reliance on a clause in "the preamble on each declarations page" that says the "reinsurer does hereby reinsure." "New York law recognizes that definitive, particularized contract language takes precedence over expressions of intent that are general, summary, or preliminary." *John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co.*, 717 F.2d 664, 669 n.8 (2d Cir. 1983). The definitive, particularized contract language in ¶ 3 takes precedence over the general language in the preamble. Also, the provision actually says "subject to the general conditions set forth on the reverse side hereof, the reinsurer does hereby reinsure." P-4. Thus, the agreement to reinsure is subject to the terms and conditions, which includes ¶ 3.

## VII.    Munich Failed To Show Its Entitlement To Reimbursement.

Munich still fails to show that it has a right to reimbursement, much less that if such a right existed, Munich is entitled to reimbursement here. Tellingly, Munich's lead argument is that Utica did not introduce evidence that Munich must have a reimbursement provision to have a right to reimbursement. This is Munich's claim and it is Munich's burden to show such a right.

Utica's purported failure to introduce evidence negating Munich's alleged right is irrelevant where Munich did not introduce any evidence whatsoever to establish such a right in the first place. Utica has shown that the cases Munich relies upon do not apply. Dkt. 442 at 27 n.33.

Munich also alleges that it is asserting a breach of contract claim, not a misrepresentation claim. But Munich has yet to identify any contract provision that Utica breached so Munich cannot prevail on a contract claim. The Court should reject any misrepresentation claim because Munich did not plead it and cannot satisfy its requirements. Dkt. 431 at 47-48. Even assuming Munich could show reliance on a misrepresentation by twisting Miller's testimony (which it cannot, see Dkt. 441 ¶¶ 153-154), Munich's decision to pay was a "business decision," not a "reflection of the contract language" or "its perceived obligations under the 1977 certificate." Dkt. 431-1 ¶ 268. Munich is wrong that it was improper for Utica to cite this evidence because it refers to Munich's position on its withdrawn Bellefonte defense. See Reply for ¶ 268.[26]

Furthermore, Utica's affirmative defenses foreclose any entitlement to reimbursement. In its opposition, Munich only addresses waiver. It contends that waiver does not apply in reinsurance yet cites nothing to support that position. Likewise, Munich's newest claim that "Utica was rushing MRAm to cut short its investigation" is frivolous. D-156 (Munich advising Utica that it wanted to "get these billings resolved before year-end."); Tr. at 1770:22-1772:5 (Miller: Munich did not pay the 1977 billing promptly at the expense of properly evaluating it).

## VIII.  Conclusion

The Court should rule in Utica's favor and require Munich to pay the outstanding billings plus prejudgment interest.

---

[26] Even if Munich somehow established a misrepresentation and reliance, Munich must still show that Utica knew the representation was false, which Munich cannot do. Dkt. 431 at 48.

20

Dated: October 12, 2018                HUNTON ANDREWS KURTH LLP

/s/ Syed. S. Ahmad
Syed S. Ahmad (N.D.N.Y. Bar No. 602911)
Patrick M. McDermott (admitted *pro hac vice*)
Latosha Ellis (admitted *pro hac vice*)
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: (202) 955-1500
sahmad@huntonak.com

Mary Beth Forshaw (NDNY Bar No. 519855)
Christopher G. Lee (NDNY Bar No. 520040)
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000

*Attorneys for Utica Mutual Insurance Co.*

21

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 12, 2018, the foregoing and all accompanying filings were served on counsel of record by ECF.

/s/ Syed S. Ahmad
Syed S. Ahmad (N.D.N.Y. Bar No. 602911)
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1656
sahmad@huntonak.com

*Counsel for Utica Mutual Insurance Company*